**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Norfolk Division)**

| | |
|---|---|
| MICHELE DELUCA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INSTADOSE PHARMA CORP. f/k/a MIKROCOZE, INC. and TERRY WILSHIRE,<br><br>Defendants. | Case No.<br><br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Michele DeLuca ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Instadose Pharma Corp. f/k/a Mikrocoze, Inc. ("Instadose", "Mikrocoze", or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Instadose securities between December 8, 2020 and November 24, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and one of its top officials.

2.     Instadose does not have significant operations and was at all relevant times classified as a "shell" company.  Instadose was formerly known as "Mikrocoze, Inc.", which was organized to sell micro-furniture for small spaces via the Internet.  The Company has since pivoted its business to focus on growth and acquisition of pharmaceutical grade agricultural products.

3.     On December 7, 2020, Instadose (then still known as Mikrocoze) entered into a non-binding letter of intent with Instadose Pharma Corp., a Canadian-based cannabis producer ("Instadose Canada"), and holders of a majority of its outstanding shares for a transaction to acquire 100% of the outstanding common shares of Instadose Canada in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange (the "Business Combination").

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) Instadose's internal controls and policies were

2

inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; (iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.        On July 9, 2021, the Ontario Securities Commission ("OSC") announced that the Chairman and Chief Executive Officer ("CEO") of Instadose Canada, Grant Ferdinand Sanders ("Sanders"), was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors.  The OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business.

6.        Then, on October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remains subject to customary closing conditions, including approval by a Canadian court.  Following completion of the Business Combination, Instadose expected that its Board of Directors would consist of, among others, Sanders.

7.        Then, on November 24, 2021, in a filing with the SEC, Instadose disclosed that "[o]n November 23, 2021, the Company was notified by the SEC that it had ordered, pursuant to Section 12(k) of the [Exchange Act], that trading in the securities of [Instadose] is suspended for the period from 9:30 a.m. EDT on November 24, 2021, through 11:59 p.m. EDT on December 8, 2021."  Instadose advised investors that the SEC's order specifically stated that "it appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of [Instadose] securities . . . because of questions and concerns regarding the adequacy and accuracy

of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate."

8.    On this news, and after Instadose's common stock began publicly trading again on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Instadose is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Instadose securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Instadose is a Nevada corporation with principal executive offices located at 1545 Crossways Boulevard, Suite 250, Chesapeake, Virginia 23320-0210.  Instadose securities traded in an efficient market on the OTC markets ("OTC") under the trading symbols "INSD" and "MZKR" during the Class Period.

16.     Defendant Terry Wilshire ("Wilshire") has served as Instadose's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of the Company at all relevant times.

17.     Wilshire possessed the power and authority to control the contents of Instadose's SEC filings, press releases, and other market communications.  Wilshire was provided with copies of Instadose's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of his positions with Instadose, and his access to material information available to him but not to the public, Wilshire knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  Wilshire is liable for the false statements and omissions pleaded herein.

18.     Instadose and Wilshire are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Instadose does not have significant operations and was at all relevant times classified as a "shell" company.  Instadose was formerly known as "Mikrocoze, Inc.", which was organized to sell micro-furniture for small spaces via the Internet.

20.     On November 6, 2020, the Company, then still known as Mikrocoze, reported that on October 9, 2020, Sukhmanjit Singh ("Singh"), the Company's CEO, Chief Financial Officer, President, Treasurer, Secretary, and Director of the Company, had resigned effective immediately. Following Singh's resignation, the Company became heavily involved with Instadose Canada.

21.     For example, in the same disclosure regarding Singh's resignation, the Company reported that Defendant Wilshire, a purported award-winning risk and fraud mitigation manager "currently responsible for Global Risk assessment and Corporate Social Responsibility at Instadose Pharm Corp."—*i.e.*, most likely, Instadose Canada—had consented to act as the new President and Member of the Board of Directors of the Company.

22.     Approximately a month later, on December 7, 2020, Instadose reported the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada.

23.     Then, on March 11, 2021, Mikrocoze changed its name to "Instadose Pharma Corp." and its trading symbol to "INSD", while pivoting its business to focus on growth and acquisition of pharmaceutical grade agricultural products—*i.e.*, Instadose Canada's focus.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on December 8, 2020, the day after Instadose filed a current report on Form 8-K with the SEC, signed by Defendant Wilshire, reporting the Company's

intention to acquire 100% of the outstanding common shares of Instadose Canada.  Specifically, that filing stated, in relevant part:

> On December 7, 2020, Mikrocoze . . . entered into a non-binding letter of intent (the "Letter of Intent") with Instadose [Canada] . . . and holders of a majority of its outstanding shares (the "Shareholders") for a potential transaction pursuant to which the Company would acquire 100% of the outstanding common shares of Instadose [Canada] (the "Acquisition") from the Shareholders in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange.

> The parties intend that the closing of the Acquisition occur no later than 90 days after the execution of the definitive transaction documents (the "Definitive Documents"), subject to extension by the parties. Closing of the Acquisition would be subject to a number of conditions, including but not limited to, approval of the Acquisition by the shareholders of the Company and Instadose [Canada], obtaining necessary third party approvals, and no material adverse change occurring in the Company or Instadose [Canada].

> The parties have agreed to an exclusivity period of ninety (90) days from the date of the Letter of Intent, during which negotiations leading to the execution of Definitive Agreement shall be undertaken in good faith and in a mutually exclusive manner and that neither party will circumvent the other during such negotiations.

25.     On February 25, 2021, Instadose filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fourth quarter and fiscal year ended November 30, 2020 (the "2020 10-K").  That filing contained substantively the same statements as referenced in ¶ 24, *supra*, regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada.

26.     In its section regarding related party transactions, the 2020 10-K only advised that "[d]uring the period ended November 30, 2020, an entity controlled by the former CEO paid expenses of $26,091 on behalf of the Company and advanced the Company $330"; that "[t]he total amount owed to the former CEO, or entities controlled by the former CEO, as of November 30, 2020 was $82,085 (November 30, 2019 - $55,664)"; and that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment."

27.     The 2020 10-K also stated that "[t]here are no off-balance sheet arrangements currently contemplated by management or in place that are reasonably likely to have a current or future effect on the business, financial condition, changes in financial condition, revenue or expenses, result of operations, liquidity, capital expenditures and/or capital resources."

28.     Appended as an exhibit to the 2020 10-K was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendant Wilshire certified that "the [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of Mikrocoze[.]"

29.     On April 14, 2021, Instadose filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended February 28, 2021 (the "1Q21 10-Q").  That filing contained substantively the same statements as referenced in ¶ 24, *supra*, regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada, while noting that "[b]oth parties have agreed to verbally extend the time [for the agreement] in order to complete the audit of the seller."

30.     In its section regarding related party transactions, the 1Q21 10-Q only advised that "[d]uring the period ended February 28, 2021, the CEO paid expenses of $11,355 on behalf of the Company"; that "[t]he total amount owed to the CEO as of February 28, 2021, was $11,355 (November 30, 2020 - $82,085- owed to the previous CEO)"; that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; and that "[t]his was reflected as an increase in Additional-Paid-In-Capital in the financial statements."

8

31.     The 1Q21 10-Q also stated that, other than a situation described in its section regarding liquidity and capital resources—namely, certain "cash advances from our sole Officer and Director," "cash received in our initial offering," and a verbal commitment from Defendant Wilshire "to continue to fund our operations up to $75,000[,]" which "is not in writing and maybe [*sic*] rescinded at any time"—"the company has no off-balance sheet arrangements that have or are reasonably likely to have a current or future effect or change on the company's financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that are material to investors."

32.     Appended as an exhibit to the 1Q21 10-Q was substantively the same SOX certification as referenced in ¶ 28, *supra*, signed by Defendant Wilshire.

33.     On July 9, 2021, the OSC announced that the Chairman and CEO of Instadose Canada, Sanders, was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors.  The OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business.

34.     On July 14, 2021, Instadose filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended May 31, 2021 (the "2Q21 10-Q").  That filing contained substantively the same statements as referenced in ¶ 24, *supra*, regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada, while noting that "[t]he anticipated consummation of the contemplated transaction is July 31, 2021."

35.     In its section regarding related party transactions, the 2Q21 10-Q only advised that "[d]uring the period ended May 31, 2021, the CEO paid expenses of $33,930 on behalf of the Company"; that "[t]he total amount owed to the CEO as of May 31, 2021, was $51,130, which includes $17,200 in accrued management fees. (November 30, 2020 - $82,085- owed by the previous CEO)"; that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; that "[t]his was reflected as an increase in Additional-Paid-In-Capital in the financial statements"; and that the Company had entered into an executive employment agreement with Defendant Wilshire, while detailing the terms of that employment agreement.

36.     The 2Q21 10-Q also contained substantively the same statements as referenced in ¶ 31, *supra*, regarding the Company's off-balance sheet arrangements, while also providing the following details regarding its evolving liquidity and capital resources situation:

> As of May 31, 2021, we had $5 in cash and $51,130 due to a related party. As of November 30, 2020, we had 65 in cash, and $82,085 due to a related party, the former president/director of the Company . Total liabilities as of May 31, 2021, were $60,409 compared to $82,423 at November 30, 2020. The funds available to the Company will not be sufficient to fund the planned operations of the Company and maintain a reporting status. As of May 31, 2021, the Company owed $51,130, which includes $17,200 in accrued management fees. (November 30, 2020; $82,085 owed to the previous CEO of the Company) to its current Chief Executive Officer. During the six-month period ended May 31, 2021 and May 31, 2020, the CEO, paid expenses of $33,930 and $9,410, respectively, on behalf of the Company. All amounts due to the related party are unsecured, non-interest bearing and have no set terms of repayment.

37.     Appended as an exhibit to the 2Q21 10-Q was substantively the same SOX certification as referenced in ¶ 28, *supra*, signed by Defendant Wilshire.

38.     On September 22, 2021, Instadose filed a current report on Form 8-K with the SEC, signed by Defendant Wilshire, providing an update on the contemplated transaction with Instadose

Canada (the "September 2021 8-K").  That filing stated, *inter alia*, that "[o]n September 1, 2021, Instadose . . . entered into a plan of arrangement (the 'Agreement') with [Instadose Canada,]" and that "[u]pon the satisfaction of the conditions set forth in the Agreement, the Company will acquire all of the issued and outstanding shares of common stock (the 'Shares') of Instadose[ Canada,]" with "[t]he consideration to be paid for each Share [to] be 1.34 shares of common stock of the Company."

39.     The September 2021 8-K also highlighted the business operations of Instadose Canada, indicating to investors the purported benefits that would flow to Instadose following consummation of the Business Combination:

> [Canadian] Instadose is building a large-scale commercial outdoor growing, cultivation, production, and global distribution platform (the "Global Distribution Platform") for medicinal cannabis and cannabinoid oil. Utilizing the Global Distribution Platform, Instadose [Canada] will be seeking to open the commercial gateway to a new wholesale marketplace capable of providing pharmaceutical industry companies with large, sustainable, consistent, diverse, and low-cost supplies of high-quality medicinal cannabis and cannabinoid oil for use in bulk as an active pharmaceutical ingredient.
>
> Instadose [Canada]'s Global Distribution Platform spans five (5) world continents to date, including Africa, Europe, Asia, South America, and North America (each, a "Continent"). Within each Continent, Instadose [Canada] is establishing operational subsidiaries and joint venture partnerships to secure access to government-issued licenses and permits in countries such as The Democratic Republic of the Congo, the Republic of North Macedonia, the Portuguese Republic, the Republic of India, Colombia, Mexico, and Canada, each seeking to increase their level of participation within the global Medicinal Cannabis industry.
>
> Upon consummation of the transaction, the Company will no longer be considered a "shell" company.

40.     On October 13, 2021, Instadose filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended August 31, 2021 (the "3Q21 10-Q").  That filing contained substantively the same statements as referenced in ¶¶ 38-39, *supra*, providing an update on the contemplated Business Combination, and indicating to investors

the purported benefits that would flow to Instadose following consummation of the Business Combination.

41.     In its section regarding related party transactions, the 3Q1 10-Q only advised that "[d]uring the period ended August 31, 2021, the CEO paid expenses of $45,974 on behalf of the Company"; that "[t]he total amount owed to the CEO as of August 31, 2021, was $88,974 (November 30, 2020 - $82,085- owed by the previous CEO), which includes $43,000 in accrued management fees"; that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; that "[t]his was reflected as an increase in Additional-Paid-In-Capital in the financial statements"; and that the Company had entered into an executive employment agreement with Defendant Wilshire, while detailing the terms of that employment agreement.

42.     The 3Q21 10-Q also contained substantively the same statements as referenced in ¶ 31, *supra*, regarding the Company's off-balance sheet arrangements, while also providing the following details regarding its evolving liquidity and capital resources situation:

> As of August 31, 2021, we had $nil in cash and $88,974 due to a related party. As of November 30, 2020, we had 65 in cash, and $82,085 due to a related party, the former president/director of the Company . Total liabilities as of August 31, 2021, were $113,233 compared to $82,423 at November 30, 2020. The funds available to the Company will not be sufficient to fund the planned operations of the Company and maintain a reporting status. As of August 31, 2021, the Company owed $88,974 (November 30, 2020; $82,085 owed to the previous CEO of the Company) to its current Chief Executive Officer. During the nine-month period ended August 31, 2021 and 2020, the CEO paid expenses of $45,974 (and accrued management fees of $43,000) and $9,410, respectively, on behalf of the Company. All amounts due to the related party are unsecured, non-interest bearing and have no set terms of repayment.

43.     Additionally, the 3Q21 10-Q stated that "[d]uring the period the Company agreed to sell 1,000 shares of the Company's common stock at $1.00 per share to 10 shareholders" and

"[n]o cash was received and shares were issued subsequent to the period"; that "[s]ubsequent to the period the Company agreed to sell an additional 200 shares of the Company's common stock at $1.00 per share to 2 shareholders"; and that "[t]he $1,200 in cash was received for all 10 shareholders during the period and 2 shareholders from subsequent period and all 1,200 shares were issued subsequent to the period."

44.     Appended as an exhibit to the 3Q21 10-Q was substantively the same SOX certification as referenced in ¶ 28, *supra*, signed by Defendant Wilshire.

45.     On October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remains subject to customary closing conditions, including approval of a Canadian court. Following completion of the Business Combination, Instadose expected that its Board of Directors would consist of, among others, Sanders.

46.     On October 21, 2021, Instadose filed a current report on Form 8-K with the SEC, signed by Defendant Wilshire, providing an update on the contemplated transaction with Instadose Canada. That filing stated, in relevant part:

> On October 19, 2021, Instadose [Canada] applied to the Supreme Court of British Columbia (the "Court") in connection with a proposed plan of arrangement (the "Plan of Arrangement") giving effect to an arrangement (the "Arrangement") under section 288 of the Business Corporations Act (British Columbia), S.B.C. 2002, c.57, as amended, (the "BCBCA") involving the Petitioner, its shareholders and Instadose Pharma Corp. (formerly Mikrocoze Inc.) ("MZKR").

> Instadose Canada received a Final Order which provided for, among others, (i) pursuant to Section 291 (4)(c) of the BCBCA the Arrangement as provided for in the Plan of Arrangement, including the terms and conditions thereof and the distributions, issuances, exchanges and/or adjustments of securities contemplated therein or in connection therewith, is procedurally and substantively fair and reasonable to the Instadose Shareholders; and (ii) pursuant to section 291(4)(a) of the BCBCA, the Arrangement as provided for in the Plan of Arrangement, including the terms and conditions thereof and the distributions, issuances,

exchanges, and/or adjustments of securities contemplated therein or in connection therewith, be and was hereby approved by the Court.

Closing of the Arrangement is expected to occur on or about November 15, 2021.

47.     The statements referenced in ¶¶ 24-32, 34-44, and 46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) Instadose's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; (iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

48.     On November 24, 2021, during after-market hours, Instadose filed a current report on Form 8-K with the SEC, disclosing that the SEC had ordered the suspension of trading of the Company's securities because of various issues with its business, trading activity, and Canadian affiliate.  Appended as an exhibit to that filing was the SEC's Order of Suspension of Trading, dated November 23, 2021, which stated, in relevant part:

> It appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of the securities of Instadose. . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate . . . .

The [SEC] is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

THEREFORE, IT IS ORDERED . . . that trading in the securities of the . . . Company is suspended for the period from 9:30 a.m. EST on November 24, 2021, through 11:59 p.m. EST on December 8, 2021.

49.     On this news, and after Instadose's stock began publicly trading again on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021.

50.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired Instadose securities during the Class Period and were damaged upon the revelation of the alleged corrective disclosures (the "Class").  Excluded from the Class are Defendants herein; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Instadose securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Instadose or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Instadose;

- whether Wilshire caused Instadose to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Instadose securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Instadose securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Instadose securities between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

58.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Instadose securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Instadose securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

63.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Instadose securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Instadose's finances and business prospects.

64.     By virtue of their positions at Instadose, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

65.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior manager and/or director of Instadose, Wilshire had knowledge of the details of Instadose's internal affairs.

66.     Wilshire is liable both directly and indirectly for the wrongs complained of herein. Because of his positions of control and authority, Wilshire was able to and did, directly or indirectly, control the content of the statements of Instadose.  As officer and/or director of a publicly held company, Wilshire had a duty to disseminate timely, accurate, and truthful information with respect to Instadose's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Instadose securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Instadose's business and financial condition which were concealed by Defendants, Plaintiff and the other

members of the Class purchased or otherwise acquired Instadose securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

67.     During the Class Period, Instadose securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Instadose securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Instadose securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Instadose securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

68.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Wilshire)**

70.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, Wilshire participated in the operation and management of Instadose, and conducted and participated, directly and indirectly, in the conduct of Instadose's business affairs.  Because of his senior positions, he knew the adverse non-public information about Instadose's misstatement of income and expenses and false financial statements.

72.     As officer and/or director of a publicly owned company, Wilshire had a duty to disseminate accurate and truthful information with respect to Instadose's financial condition and results of operations, and to correct promptly any public statements issued by Instadose which had become materially false or misleading.

73.     Because of his positions of control and authority as a senior officer, Wilshire was able to, and did, control the contents of the various reports, press releases and public filings which Instadose disseminated in the marketplace during the Class Period concerning Instadose's results of operations.  Throughout the Class Period, Wilshire exercised his power and authority to cause Instadose to engage in the wrongful acts complained of herein. Wilshire, therefore, was a "controlling person" of Instadose within the meaning of Section 20(a) of the Exchange Act.  In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of Instadose securities.

74.     Wilshire, therefore, acted as a controlling person of Instadose.  By reason of his senior management positions and/or being a director of Instadose, Wilshire had the power to direct the actions of, and exercised the same to cause, Instadose to engage in the unlawful acts and

conduct complained of herein.  Wilshire exercised control over the general operations of Instadose and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

75.     By reason of the above conduct, Wilshire is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Instadose.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 30, 2021

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*