UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| MICHELE DELUCA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>INSTADOSE PHARMA CORP. f/k/a MIKROCOZE, INC. and TERRY WILSHIRE,<br><br>Defendants. | CASE No.: 2:21-cv-00675-RCY-RJK<br><br>**MEMORANDUM OF LAW OF KATHY J. TAWZER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**CLASS ACTION** |

Lead Plaintiff Movant Kathy J. Tawzer ("Ms. Tawzer" or "Movant") respectfully submits this memorandum in opposition to the competing lead plaintiff motions filed by: (i) Patrick Vicens ("Vicens") (Dkt. No. 11); (ii) Robert Dufner ("Dufner") (Dkt. No. 14); and (iii) Mavis Brown and Tim Brown (the "Group") (Dkt. No. 17).

## I.      INTRODUCTION

Before the Court are four lead plaintiff motions. Only one movant, the Group, claims to have larger losses than Ms. Tawzer. However, the Group is not the presumptive lead plaintiff as it (and its members) cannot meet Rule 23's typicality and adequacy requirements. The Group is an inadequate, improper, unrelated grouping of investors brought together by counsel to create the largest financial interest.

In contrast, Ms. Tawzer has the greatest losses and satisfies the adequacy and typicality requirements of Rule 23. As such, the PSLRA provides that Ms. Tawzer is presumed to be the

1

"most adequate plaintiff" and, therefore, should be appointed lead plaintiff on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II.    ARGUMENT

Under the PSLRA's analysis, Ms. Tawzer should be appointed the Lead Plaintiff as "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id*. "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and is thus the presumptively most adequate plaintiff." *Id*.

Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Id*. at 265. In addition, the presumptive lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should … disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." Id. at 267.

2

Here, the Group failed to make the requisite showing of adequacy and typicality required the trigger the Lead Plaintiff presumption.

## A.   THE GROUP IS AN IMPROPER LAWYER-MADE GROUP CREATED BY COUNSEL

The Group is an unrelated group of investors brought together by counsel to create the largest financial interest. The Group's submissions fail to demonstrate otherwise. Indeed, the Group has not provided any client-driven reason why an investor in Florida decided to team up with an investor in Missouri—especially as they did not know of each other until introduced by counsel. Simply, there is no client-driven reason. These investors were brought together by lawyers to create the largest financial interest.[1] Courts refuse to appoint such groups as Lead Plaintiff as these groups fly in the face of the PSLRA. *In re E.Spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 212 (D. Md. 2000) ("… the PSLRA was enacted by Congress to remedy certain perceived abuses in securities class action litigation.") (citing *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. at 411)).

While courts are divided on the issue of whether unrelated investors are permitted, the recent trend is to reject unrelated groups. *See e.g.*, *E.Spire Commc'ns, Inc.*, 231 F.R.D. at 213 ("it has been held that multiple investors serving as lead plaintiff, although permissive, is a 'suboptimal' result when compared to having a single investor serve as lead plaintiff.") (citing *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1068 (C.D. Cal. 1999)); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) ("[I]f a movant 'group' was created by the efforts of lawyers for the purpose of ensuring that it is named lead counsel, the 'group' should

---

[1] While Mavis Brown and Tim Brown share a common last name, they are apparently not related and had no pre-existing relationship. This common last name is at best a coincidence and at worst an attempt by their counsel to cobble together a group of unrelated investors that appear to be related—ducking a further review of their relationship (or here, lack thereof).

not be named lead plaintiff."); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 10684924, at \*4 (D. Colo. May 4, 2009) (finding proposed lead plaintiff group "ha[d] not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group.'").

While the Group members submitted a joint declaration in an effort to support the Group, their boilerplate declaration is insufficient. *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. April 14, 2020) (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the Cendant court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."); *Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at \*5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff motion of a group of geographically dispersed plaintiffs that did not state how they were joined together and whose declaration contained conclusory statements); *Jakobsen v. Aphria, Inc.,* 2019 WL 1522598, at \*2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at \*2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation") (internal quotation marks omitted)).

Importantly, the Group provides no client- or class-driven reason for this grouping. Indeed, the Group admits that "[u]pon learning of each other's interest seeking appointment of lead

plaintiff in this matter through our counsel, we communicated with one another and our counsel on Monday, February 28, 2022, at approximately 2:00 PM EST[.]" Dkt. No. 17-6 ¶6. This admission is even more striking for two additional facts it disclosed: (1) Mavis Brown and Tim Brown only spoke to each other mere hours before the lead plaintiff deadline; (2) Mavis Brown and Tim Brown have not spoked to each other in the absence of counsel.

This lack of relationship and communication by the Group shows that "[a]s formed, the [] Group is an artificial one, and it has not been shown that the members share business or other relationships. Had the [] Group been able to show that its members had a relationship with each other based upon factors independent of this class action, there would then be more support for their argument that they should be presumed to be the most adequate lead plaintiff. However, they have failed to show that they are a 'cohesive group,' foreclosing their appointment as the most adequate lead plaintiffs." *E.Spire Commc'ns, Inc.*, 231 F.R.D. at 213.

Fittingly, with this group of two who have never independently spoken to each other and have not shown any ability to work together in the absence of counsel, the Group put forward a non-sensical dispute resolution mechanism whereby disagreements are to be resolved by "our respective voting power will be determined in proportion to the amount of losses suffered by each group member." Dkt. No. 19-8 at 5 ¶10. This means Mavis Brown, with the larger loss, would *always* have decision-making power, rendering the grouping and purported "joint decision" making entirely hollow—and further demonstrates that the Group was merely formed by counsel to create the largest loss. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group with a similar dispute resolution system).

Finally, the Court should not permit the members of the Group to be considered individually as the Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Group. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts."); *Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis).

The Group's motion should be denied as it has failed to demonstrate it is entitled to the Lead Plaintiff presumption. The movant that has the largest financial interest must "make a prima

facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). As discussed above, the Group fails to meet the requirements of Rule 23. The PSLRA then requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality. *See Varghese v. China Shenghuo Pharm. Holdings, Inc*., 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008) ("If [the movant alleging the greatest financial interest] does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it Rule 23."); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

The Court then should turn its attention to the movant with the second highest claimed losses, Ms. Tawzer.

### B.      MS. TAWZER SHOULD BE APPOINTED LEAD PLAINTIFF

In contrast to the Group, Ms. Tawzer is the lead plaintiff movant with the greatest losses and who meets the requirements of Rule 23. As set forth herein and in her opening memorandum, (Dkt. No. 8), Ms. Tawzer is not subject to unique defenses and satisfies the requirements of being a lead plaintiff. Ms. Tawzer lost approximately $47,887 in connection with her Instadose transactions. Moreover, Ms. Tawzer refrained from moving as part of a clearly inadequate group cobbled together by counsel.

To overcome the strong presumption entitling Ms. Tawzer to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists nor has been proffered that Ms. Tawzer is inadequate to be the Lead Plaintiff. As Ms. Tawzer has made a prima facie demonstration of her typicality and

adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Ms. Tawzer should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

### C.    MS. TAWZER'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

Here, Ms. Tawzer has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class. As its resume reflects, and a court in this District have previously concluded, Rosen Law is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 10-4.

Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. Dkt. No. 10-4. Founding partner, Laurence Rosen, was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020. Thus, the Court may be assured that by approving Ms. Tawzer's selection of counsel, the members of the class will receive excellent legal representation.

Further, Ms. Tawzer's liaison counsel, The Law Firm of Carlton F. Bennett, P.L.L.C.., has extensive experience in this Court and maintains an office in this judicial district. Dkt. No. 10-5 at 2.  In contrast, the Group's liaison counsel, Levi & Korsinsky LLP, does not maintain an office in the Commonwealth of Virginia and appears to have a dearth of experience in this Court.  The selection of an out of state law firm as "liaison counsel" is an oxymoron—and needlessly increases costs in this case.  Dkt. No. 17-8 at 2.  Ms. Tawzer's choice of counsel—lead and liaison—shows her commitment and care.

## D.    COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Ms. Tawzer satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cendant Corp.*, 264 F.3d at 262.

After the inadequate Group and Ms. Tawzer, the remaining competing movants hold smaller financial interests. Mr. Dufner has an approximate loss of $33,919 (Dkt. No. 16-1) and Patrick Vicens has an approximate loss of $4,760 (Dkt. No. 13-3).

In no way is Ms. Tawzer conceding or acknowledging that the competing movants are adequate or that their claims are typical. Ms. Tawzer reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

## III.   CONCLUSION

For the foregoing reasons, Ms. Tawzer's motion should be granted in its entirety and the competing motions should be denied.

Dated: March 14, 2022                    Respectfully submitted,

                                         **THE LAW FIRM OF CARLTON F.
                                         BENNETT, P.L.L.C.**

                                         /s/ Carlton F. Bennett

9

Carlton F. Bennett (Va. Bar No. 18453)
120 South Lynnhaven Road, Suite 100
Virginia Beach, VA 23452
Telephone: (757) 486-5454
Fax: (757) 486-8910
Email: cbennett@carltonbennettlaw.com

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Carlton F. Bennett

10