# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## (Norfolk Division)

|  |  |
|---|---|
| MICHELE DELUCA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INSTADOSE PHARMA CORP. f/k/a MIKROCOZE, INC. and TERRY WILSHIRE,<br><br>Defendants. | Civil Action No: 2:21CV675 (EWH)<br><br>CLASS ACTION |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DEFAULT JUDGMENT

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................................1

PROCEDURAL HISTORY .........................................................................................................4

ARGUMENT ...............................................................................................................................6

I.  This Court Has Jurisdiction ............................................................................................6

    A.  This Court Has Subject Matter Jurisdiction Over This Action...........................6

    B.  This Court Has Personal Jurisdiction Over Defendants .....................................6

II.  The Court Should Certify a Default Judgment Class.......................................................8

    A.  The Rule 23(a) Standards Are Met ...................................................................10

        1.  Numerosity Is Satisfied........................................................................11

        2.  Commonality Is Satisfied.....................................................................12

        3.  Typicality Is Satisfied ..........................................................................14

        4.  Adequacy Is Satisfied ..........................................................................15

    B.  The Rule 23(b) Requirements Are Also Satisfied ............................................16

        1.  Common Questions of Law and Fact Predominate Over Individual Issues .....16

        2.  A Class Action Is Superior to Other Available Methods for Resolving This Controversy........................................................................................17

III.  The Court Should Appoint Bragar Eagel & Squire, P.C. as Class Counsel ...................18

IV.  The Court Should Enter A Default Judgment.................................................................19

    A.  Plaintiffs Have Stated A Claim Upon Which Relief Can Be Granted................20

        1.  The Complaint Alleges Actionable Misstatements and Omissions ..................20

        2.  The Complaint Adequately Pleads A Strong Inference of Scienter..................21

        3.  The Complaint Adequately Alleges Reliance and Loss Causation...................23

        4.  The Complaint Adequately Alleges Control Person Liability ..........................25

    B.  Plaintiffs and the Default Judgment Class Are Substantially Prejudiced By the Delay ..........................................................................................................26

    C.  The Default Is Willful.......................................................................................27

    D.  Defendants Have Not Asserted Any Meritorious Defenses ..............................28

V.  The Class is Entitled to $8,479,189.95 in Damages .......................................................29

CONCLUSION............................................................................................................................30

# TABLE OF AUTHORITIES

**CASES**

*Aero Norfolk, LLC v. Phila. Truck Lines, Inc.*,
  C.A. No. 2:21cv101 (RCY), 2022 U.S. Dist. LEXIS 50504 (E.D. Va. Mar. 21, 2022) ........... 29

*Affiliated Ute Citizens of the State of Utah v. United States*,
  406 U.S. 128 (1972) ................................................................................................... 23, 24

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 15, 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................................... 10, 24

*Basic Inc. v. Levinson*,
  485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ............................................ 23

*Black v. Lane*,
  22 F.3d 1395 (7th Cir. 1994) ..................................................................................... 20

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..................................................................................... 17

*Bone v. Dick's Sporting Goods, Inc.*,
  C.A. No. 3:20-cv-02856-JMC, 2022 U.S. Dist. LEXIS 25921 (D.S.C. Feb. 14, 2022) ............. 8

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*,
  06 Civ. 14226 (RLC), 2008 U.S. Dist. LEXIS 107062 (S.D.N.Y. Oct. 27, 2008) ................... 27

*Broussard v. Meineke Disc. Muffler Shops*,
  155 F.3d 331 (4th Cir. 1998) ..................................................................................... 12

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) ..................................................................................... 10

*Buchanan v. Consol. Stores Corp.*,
  217 F.R.D. 178 (D. Md. 2003) ................................................................................... 12

*Burt v. Maasberg*,
  C.A. No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732 (D. Md. Mar. 31, 2013) ................... 24

*Burton v. TJX Cos.*,
  No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839 (E.D. Va. May 1, 2008) ............................ 27

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
  496 F. Supp. 3d 952 (E.D. Va. 2020) ....................................................................... 26

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ...................................................................................... 11

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
  6 F.3d 177 (4th Cir. 1993) ......................................................................................... 11

*Choice Hotels Int'l v. Bonham*,
  No. 96-2717, 1997 U.S. App. LEXIS 26909 (4th Cir. Sept. 30, 1997) ...................................... 8

*Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*,
  375 F.2d 648 (4th Cir. 1967) ................................................................................................ 11

*Davis v. Hutchins*,
  321 F.3d 641 (7th Cir. 2003) ............................................................................................. 8, 10

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ......................................................................................... 13

*Dundee Cement Co. v. Howard Pipe & Concrete Prods.*,
  722 F.2d 1319 (7th Cir. 1983) ............................................................................................. 19

*Educ. Credit Mgmt. Corp. v. Optimum Welding*,
  285 F.R.D. 371 (D. Md. 2012) ............................................................................................. 19

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) ................................................................................................. 7

*Esplin v. Hirschi*,
  402 F.2d 94 (10th Cir. 1968) ................................................................................................. 9

*Fitzsimmons v. Barton*,
  589 F.2d 330 (7th Cir. 1979) ................................................................................................. 7

*Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*,
  908 F. Supp. 2d 763 (W.D. Va. 2012) ................................................................................... 8

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................................................. 8

*Glaser v. Enzo Biochem, Inc.*,
  464 F.3d 474 (4th Cir. 2006) ............................................................................................... 25

*GlobalSantaFe Corp. v. Globalsantafe.com*,
  250 F. Supp. 2d 610 (E.D. Va. 2003) ................................................................................... 20

*Gonzalez v. Spunk Indus., Inc.*,
  C.A. No. ELH-18-2935, 2019 U.S. Dist. LEXIS 156489 (D. Md. Sept. 13, 2019) ................. 28

*HICA Educ. Loan Corp. v. Bolte*,
  No. 11 Civ. 6404 (LTS)(GWG), 2012 U.S. Dist. LEXIS 17288 (S.D.N.Y. Feb. 10, 2012) .... 29

*Hogue v. Milodon Eng'g, Inc.*,
  736 F.2d 989 (4th Cir. 1984) ................................................................................................. 7

*In re Alco Int'l Grp., Inc., Sec. Litig.*,
  158 F.R.D. 152 (S.D. Cal. 1994) ......................................................................................... 17

*In re BearingPoint, Inc. Sec. Litig.*,
  232 F.R.D. 534 (E.D. Va. 2006) .................................................................................... passim

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) ...................................................................................... 29

*In re Facebook, Inc., IPO & Sec. & Deriv. Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013) ................................................................. 24

*In re Kirschner Med. Corp. Sec. Litig.*,
   139 F.R.D. 74 (D. Md. 1991)............................................................ 11, 13, 14, 15

*In re MF Global Holdings Ltd. Inv. Litig.*,
   No. 11 Civ. 7866(VM), 310 F.R.D. 230 (S.D.N.Y. 2015) ..................................... 18

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009) ......................................................................... 12

*In re Mills Corp. Sec. Litig.*,
   C.A. No. 1:06-77 (GBL), 2006 U.S. Dist. LEXIS 50485 (E.D. Va. May 30, 2006)................ 14

*In re Mut. Funds Inv. Litig.*,
   384 F. Supp. 2d 845 (D. Md. 2005).................................................................... 24

*In re Mut. Funds Inv. Litig.*,
   566 F.3d 111 (4th Cir. 2009) ....................................................................... 23, 25

*In re NII Holdings, Inc. Sec. Litig.*,
   311 F.R.D. 401 (E.D. Va. 2015) ......................................................................... 23

*In re PE Corp. Sec. Litig.*,
   228 F.R.D. 102 (D. Conn. 2005) ........................................................................ 15

*In re PEC Sols., Inc. Sec. Litig.*,
   418 F.3d 379 (4th Cir. 2005) ............................................................................ 25

*In re Se. Hotel Properties Ltd. P'ship Inv'r Litig.*,
   151 F.R.D. 597 (W.D.N.C. 1993)............................................................ 10, 12, 13

*In re Verisign, Inc. Sec. Litig.*,
   No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005)...................... 16

*In re Willis Towers Watson PLC Proxy Litig.*,
   No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810 (E.D. Va. Sept. 4, 2020)........ 18

*Katz v. Image Innovations Holdings, Inc.*,
   542 F. Supp. 2d 269 (S.D.N.Y. 2008) ................................................................. 26

*Kelleher v. ADVO, Inc.*,
   No. 3:06CV01442(AVC), 2009 U.S. Dist. LEXIS 68914 (D. Conn. Mar. 30, 2009).............. 14

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ............................................................................... 6

*Kiken v. Lumber Liquidators Holdings, Inc.*,
   155 F. Supp. 3d 593 (E.D. Va. 2015) ............................................................ 22, 25

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................ 18

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).......................................................................................... 21

*Minter v. Wells Fargo Bank, N.A.*,
   279 F.R.D. 320 (D. Md. 2012) ............................................................................... 9

*Mullinex v. John Crane Inc.*,
   C.A. No. 4:18-cv-33, 2022 U.S. Dist. LEXIS 193481 (E.D. Va. Oct. 24, 2022) .................... 28

*People's United Equip. Fin. Corp. v. Wright*,
   C.A. No. 1:11cv0249 (LMB/JFA), 2011 U.S. Dist. LEXIS 73107 (E.D. Va. June 9, 2011)... 20

*Peoples v. Wendover Funding, Inc.*,
   179 F.R.D. 492 (D. Md. 1998) ............................................................................... 11

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
   89 F. Supp. 3d 602 (S.D.N.Y. 2015) ...................................................................... 22

*Progressive Advanced Ins. Co. v. Holt*,
   C.A. No. 2:22cv321, 2023 U.S. Dist. LEXIS 27625 (E.D. Va. Feb. 17, 2023) ...................... 28

*Ramos-Falcon v. Autoridad de Energia Electrica*,
   301 F.3d 1 (1st Cir. 2002) ...................................................................................... 20

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................................... 12

*S.C. Nat'l Bank v. Stone*,
   139 F.R.D. 325 (D.S.C. 1991) ............................................................................ 9, 16

*Saint Jermain v. Fluidigm Corp.*,
   No. 20-cv-06617-PJH, 2020 U.S. Dist. LEXIS 234646 (N.D. Cal. Dec. 14, 2020) ................. 19

*SEC v. Miller*,
   C.A. No. TDC-19-2810, 2020 U.S. Dist. LEXIS 101646 (D. Md. June 10, 2020) ........... 6, 7, 8

*Sec. Inv'r Prot. Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ............................................................................... 7

*Simpson v. Specialty Retail Concepts*,
   149 F.R.D. 94 (M.D.N.C. 1993) ................................................................ 10, 11, 12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ............................................................................................... 23

*Subramanian v. Watford*,
   C.A. No. 20-cv-02652-CMA-STV, 2021 U.S. Dist. LEXIS 81823
   (D. Colo. Apr. 29, 2021) ....................................................................................... 19

*Sudunagunta v. NantKwest, Inc.*,
   No. CV-16-1947-MWF (JEMx), 2018 U.S. Dist. LEXIS 137084
   (C.D. Cal. Aug. 13, 2018) ..................................................................................... 16

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008) ............................................................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................... 21, 22

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ........................................................................... 7

*Turnofsky v. electroCore, Inc.*,
   Civ. No. 19-18400, 2020 U.S. Dist. LEXIS 72313 (D.N.J. Apr. 24, 2020) ........................... 19

*United Liberty Life Ins. Co. v. Ryan*,
   985 F.2d 1320 (6th Cir. 1993) ........................................................................ 7

*United States v. Moradi*,
   673 F.2d 725 (4th Cir. 1982) ......................................................................... 19

*Vick v. Wong*,
   263 F.R.D. 325 (E.D. Va. 2009) ...................................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................. 10

*Williams v. Advert. Sex, LLC*,
   410 F. App'x 578 (4th Cir. 2011) .................................................................... 28

## STATUTES

15 U.S.C. § 78aa ....................................................................................... 6

15 U.S.C. § 78t(a) ................................................................................. 6, 25

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................... 14

15 U.S.C. § 78u-4(b)(2) ............................................................................. 21

15 U.S.C. §§ 78j(b) ................................................................................... 6

15 U.S.C.S. §§ 78a .................................................................................... 6

## RULES

17 C.F.R. § 240.10b-5 .................................................................................. 6

Fed. R. Civ. P. 23(a) ................................................................................ 10

Fed. R. Civ. P. 55(b)(2)(B)-(C) ..................................................................... 29

Fed. R. Civ. P. 8(b)(6) .......................................................................... 20, 28

Fed. R. Evid. 702 .................................................................................... 29

Nev. R. Civ. P. 4.2(c)(1)(A)(i) ....................................................................... 8

## CODES

VA. CODE ANN. § 8.01-299(1) (2022) .................................................................... 8

## OTHER AUTHORITIES

3B Moore and Kennedy, *Moore's Federal Practice* ¶ 23.06-1 (2d et. 1987) ............................. 16

Pursuant to Federal Rule of Civil Procedure ("Rule") 23 and Rule 55(b), and in accordance with the Court's January 18, 2023 Order (ECF No. 31), Lead Plaintiffs Mavis Brown and Tim Brown (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Class Certification and Default Judgment against Instadose Pharma Corp. f/k/a Mikrocoze, Inc. ("Instadose" or the "Company") and Terry Wilshire ("Wilshire," and together "Defendants").[1]

## FACTUAL BACKGROUND

Instadose is a Nevada corporation. ¶ 15.[2]  During the Class Period,[3] Instadose's principal executive offices were located at 1545 Crossways Boulevard, Suite 250, Chesapeake, Virginia 23320-0210.  ¶ 15.  Instadose securities traded in an efficient market on the OTC markets under the trading symbols "INSD" and "MZKR" during the Class Period.  *Id*.

Instadose does not have significant operations and was at all relevant times classified as a "shell" company.  ¶¶ 2, 19.  Instadose was formerly known as Mikrocoze, Inc. ("Mikrocoze"), which was organized to sell micro-furniture for small spaces via the internet.  *Id*.  The Company has since pivoted its business to focus on growth and acquisition of pharmaceutical grade agricultural products.  ¶¶ 2, 23.

On November 6, 2020, the Company, then still known as Mikrocoze, reported that on October 9, 2020, Sukhmanjit Singh ("Singh"), the Company's Chief Executive Officer ("CEO"),

---

[1]  The Court also directed that Plaintiffs mail copies of the instant motion and supporting memorandum to the defaulting Defendants at their last known address.  Plaintiffs will send copies via U.S. Mail to the addresses listed in the attached Certificate of Service.

[2]  Citations to "¶ __" are to paragraphs in the Class Action Complaint filed in the above-captioned action (the "Action") on December 30, 2021 (the "Complaint").  ECF No. 1.  The facts set forth in the Complaint are incorporated herein by reference.  Capitalized terms not otherwise defined herein shall have the same meaning as in the Complaint.

[3]  Between December 8, 2020 and November 4, 2021, both dates inclusive (the "Class Period").

Chief Financial Officer, President, Treasurer, Secretary, and a Director of the Company, had resigned effective immediately. ¶ 20. Following Singh's resignation, the Company became heavily involved with Instadose Pharma Corp., a Canadian-based cannabis producer ("Instadose Canada"). *Id.* Indeed, in the same disclosure regarding Singh's resignation, the Company reported that defendant Wilshire, a purported award-winning risk and fraud mitigation manager "currently responsible for Global Risk assessment and Corporate Social Responsibility at Instadose Pharm Corp."—*i.e.*, most likely, Instadose Canada—had consented to act as the new President and a director of the Company. ¶ 21.

On December 7, 2020, Instadose (then still Mikrocoze) entered into a non-binding letter of intent with Instadose Canada and holders of a majority of its outstanding shares for a transaction to acquire 100% of the outstanding common shares of Instadose Canada in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange (the "Business Combination"). ¶¶ 3, 22, 24.

On March 11, 2021, Mikrocoze changed its name to Instadose Pharma Corp. and its trading symbol to INSD, while pivoting its business to focus on growth and acquisition of pharmaceutical grade agricultural products—*i.e.*, Instadose Canada's focus. ¶ 23.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) Instadose's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; (iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action;

2

and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times. ¶¶ 4, 47.

On July 9, 2021, the Ontario Securities Commission ("OSC") announced that the Chairman and CEO of Instadose Canada, Grant Ferdinand Sanders ("Sanders"), was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors. ¶¶ 5, 33. The OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business. *Id*.

Then, on October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remained subject to customary closing conditions, including approval by a Canadian court. ¶¶ 5, 45. Following completion of the Business Combination, Instadose expected that its board of directors would include Sanders. *Id*.

On November 24, 2021, in a filing with the SEC, Instadose disclosed that "[o]n November 23, 2021, the Company was notified by the SEC that it had ordered, pursuant to Section 12(k) of the [Exchange Act], that trading in the securities of [Instadose] is suspended for the period from 9:30 a.m. EDT on November 24, 2021, through 11:59 p.m. EDT on December 8, 2021." ¶¶ 7, 48. Instadose advised investors that the SEC's order specifically stated that "it appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of [Instadose] securities . . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information;

3

(2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate." *Id*.

On this news, and after Instadose's common stock began publicly trading again on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021.  ¶¶ 8, 49.

## PROCEDURAL HISTORY

The Complaint was filed on December 30, 2021, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  ECF No. 1.  On January 19, 2022, the original plaintiff in the action, Michele DeLuca ("DeLuca"), through a process server, effected service on Instadose by personally serving the summons and Complaint on Instadose's registered agent, State Agent and Transfer Syndicate, Inc. (the "Registered Agent"), at 112 North Curry Street, Carson City, Nevada 89703-4934.  *See* ECF No. 27-1 (Declaration of Marion C. Passmore in Support of Request for Entry of Default) at ¶ 3; *see also* ECF No. 4 (Affidavit of Service for Instadose).  On the same day, DeLuca effected service on Wilshire, through a process server, by personally serving the summons and Complaint on Instadose's Registered Agent at the same address.  ECF No. 27-1 at ¶ 4; *see also* ECF No. 5 (Affidavit of Service for Wilshire).  The deadline for Defendants to answer or otherwise respond to the Complaint was February 9, 2022. ECF No. 27-1 at ¶ 5.  Defendants did not respond on that date.

On February 28, 2022, DeLuca submitted a status report to the Court stating that because the action is a federal securities class action alleging violations under the Exchange Act, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") governs certain procedural aspects of the action, including the process for appointment of a lead plaintiff in the action.  *See* ECF No. 6; *see also* ECF No. 27-1 at ¶ 6.  DeLuca informed the Court that due to the PSLRA's procedural

requirements, counsel for DeLuca believed that an answer or motion responding to the Complaint would be premature prior to the Court's entry of an order appointing a lead plaintiff as typically, Court-appointed lead plaintiff(s) file their own amended complaint. *Id.* DeLuca also informed the Court that service was effected as stated herein with affidavits of service filed on the docket and that counsel for DeLuca had contacted Kris Osborne (authorized to accept service on behalf of the Registered Agent) by telephone and confirmed that the summonses and Complaint were forwarded to Defendants. *Id.* As of the date of the status report, DeLuca had not heard from or otherwise been contacted by counsel for Defendants, and Defendants had not yet made an appearance in the Action. *Id.*

On July 29, 2022, the Court appointed Plaintiffs as Lead Plaintiff in the Action, and appointed Bragar Eagel & Squire, P.C. ("BES") and Levi & Korsinsky, LLP ("LK") as lead counsel and local counsel, respectively. ECF No. 26.

A month after the lead plaintiff Order, Defendants had still not made an appearance in the Action, or otherwise defended the litigation in a timely manner. Accordingly, on August 24, 2022, Plaintiffs filed a Request for Entry of Default pursuant to Rule 55(a). ECF No. 27. The next day, on August 25, 2023, the Clerk of the Court made an ENTRY OF DEFAULT as to Instadose and Wilshire pursuant to Rule 55(a), for failure to file an answer in this Action. ECF No. 28.

On September 2, 2022, the plaintiffs in a related derivative action (Case No. 2:22cv66) filed a Notice of Related Cases and Motion to Coordinate Scheduling, Discovery and Pretrial Proceedings. ECF No. 29. Plaintiffs filed a Response and Objection to that motion on September 6, 2022, noting that coordination of scheduling, discovery, and pretrial proceedings of the two cases is not appropriate given that the two proceedings raise different legal claims, on behalf of

different, and in part, adverse parties, and often in these circumstances, the derivative case is stayed until the outcome of the securities class action.  ECF No. 30.

On January 18, 2023, the Court entered an Order denying the derivative plaintiffs' motion for coordination and directing Plaintiffs to file a motion for default judgment pursuant to Rule 55(b) with a supporting memorandum.

## ARGUMENT[4]

### I.    This Court Has Jurisdiction

#### A.    This Court Has Subject Matter Jurisdiction Over This Action

The claims asserted in this Action arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Accordingly, this Court has jurisdiction over the subject matter of this Action pursuant to Section 27 of the Exchange Act, which gives the United States district courts "exclusive jurisdiction of violations of this title [15 U.S.C.S. §§ 78a, *et seq*.] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title [15 U.S.C.S. §§ 78a, *et seq*.] or the rules and regulations thereunder." 15 U.S.C. § 78aa.

#### B.    This Court Has Personal Jurisdiction Over Defendants

The Second, Sixth, Seventh, and Ninth Circuits have all held "that the nationwide service provision in Section 27 [of the Exchange Act] confers personal jurisdiction over parties served anywhere in the United States." *SEC v. Miller*, C.A. No. TDC-19-2810, 2020 U.S. Dist. LEXIS 101646, at *8 (D. Md. June 10, 2020).[5]  While not directly addressing the question under Section

---

[4]  Unless otherwise noted, all internal quotations and citations are omitted and emphasis has been added.

[5]  *See, e.g.*, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) ("Section 27 confers personal jurisdiction over a defendant who is served anywhere within the

27, "in analogous contexts[,] . . . the Fourth Circuit has held that when federal law authorizes nationwide service of process, personal jurisdiction exists in any federal district without regard to whether the defendant has 'minimum contacts' with the forum state." *Miller*, 2020 U.S. Dist. LEXIS 101646, at *9. *See also ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626, 628 (4th Cir. 1997) (personal jurisdiction was established where defendants had been validly served pursuant to the RICO nationwide service provision); *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984) (finding personal jurisdiction based on the service provision of Bankruptcy Rule 704 and holding that "[w]here Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant").

"The Fourth Circuit has specified that where there is nationwide service of process by statute, the due process requirement arises under the Fifth Amendment, not the Fourteenth Amendment," so "'minimum contacts' with the forum state, 'is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision.'" *Miller*, 2020 U.S. Dist. LEXIS 101646, at *10-11 (citing *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443, 444 (4th Cir. 2015)). Accordingly, because Defendants were properly served via their registered agent in Nevada (*see*

United States."); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) ("We . . . conclude that section 27 confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States."); *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) ("Where a federal statute such as Section 27 of the Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."); *Fitzsimmons v. Barton*, 589 F.2d 330, 332-33 (7th Cir. 1979) (finding that based on "this Congressional authorization of nationwide service of process" and Rule 4, Section 27 provides personal jurisdiction upon service without application of the traditional minimum contacts test).

ECF Nos. 4-6),[6] this Court has personal jurisdiction. *See Miller*, 2020 U.S. Dist. LEXIS 101646, at \*8, \*11 ("the Court finds that the nationwide service language in the jurisdictional provisions in Section 22 of the Securities Act and Section 27 of the Exchange Act, combined with Rule 4(k)(1)(C), likewise establishes personal jurisdiction against Miller for claims under these statutes without regard to the existence of minimum contacts with Maryland, where, as here, he was served in the United States"); *Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 768 n.5 (W.D. Va. 2012).

## II.    The Court Should Certify a Default Judgment Class

Even though Plaintiffs seek a default judgment, the Court must still determine whether class certification is proper under Rule 23. *See Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) ("The Supreme Court has made clear that a class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'") (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982)).

Plaintiffs seek certification of the following class (the "Default Judgment Class") solely for purposes of entering a default judgment against Defendants:

---

[6]  *See Choice Hotels Int'l v. Bonham*, No. 96-2717, 1997 U.S. App. LEXIS 26909, at \*4 (4th Cir. Sept. 30, 1997) ("Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction.") (citations omitted).  Service here comports with the requirements of Rules 4(h), 4(e)(1), and 4(e)(2)(C) because a private process server personally served a copy of the summons and Complaint on Instadose's Registered Agent, who was also authorized to accept service on behalf of Wilshire. *See* VA. CODE ANN. § 8.01-299(1) (2022); Nev. R. Civ. P. 4.2(c)(1)(A)(i). *See also Bone v. Dick's Sporting Goods, Inc.*, C.A. No. 3:20-cv-02856-JMC, 2022 U.S. Dist. LEXIS 25921, at \*7-8 (D.S.C. Feb. 14, 2022).

> All persons and entities that purchased or otherwise acquired publicly traded Instadose securities between December 8, 2020 and November 24, 2021, both dates inclusive.[7]

By providing a single forum for shareholders to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 328 (D.S.C. 1991) ("Such suits commonly involve large numbers of investors, each with a small individual claim, who, without the class action device, might have no practical recourse due to the high costs of litigation."). "[G]iven that Rule 23 class action certification serves the 'important public purposes' of 'promoting judicial economy and efficiency' and 'afford[ing] aggrieved persons a remedy [when] it is not economically feasible to obtain relief through the traditional framework of multiple individual actions,' 'federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best service the ends of justice for the affected parties and . . . promote judicial economy.'" *Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 326 (D. Md. 2012). *See also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) ("[I]t is important to bear in mind that in light of the importance of the class action device in securities fraud suits, the requirements of Rule 23 are to be construed liberally."). "Thus, any doubts about the propriety of certification should be resolved in favor of certification." *Id*. at 538. *See also Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) (in securities cases, "any error, if there is to be one, should be committed in favor of allowing the class action").

---

[7] Excluded from the Default Judgment Class are (a) Defendants; (b) members of the immediate families of the Defendants; (c) all subsidiaries and affiliates of Defendants, including the Company's employee retirement and benefit plan(s); (d) any person who is or was an officer or director of the Company during the Class Period; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors, or assigns of any such excluded party.

9

"[W]hen considering a class certification motion, the allegations of the complaint must be taken as true." *In re Se. Hotel Properties Ltd. P'ship Inv'r Litig.*, 151 F.R.D. 597, 601 (W.D.N.C. 1993); *accord Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 97 (M.D.N.C. 1993).[8]  And, while the Court must conduct a "'rigorous analysis'" to determine whether the Rule 23 elements have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  *See also Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015) (agreeing that courts have "'no license to engage in free-ranging merits inquiries at the certification stage'" and instead, "the merits of a claim may be considered only when 'relevant to determining whether the Rule 23 prerequisites for class certification are satisfied'").

### A.       The Rule 23(a) Standards Are Met

The four prerequisites to certification under Rule 23(a) are: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) "questions of law or fact common to the class" must exist; (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and (4) "the representative parties" must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  As demonstrated below, each of these requirements is satisfied in this case.

---

[8]  Further, "[t]here is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default." *Davis v. Hutchins*, 321 F.3d at 648-49.

### 1.      Numerosity Is Satisfied

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." Impracticable does not mean impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). "To meet the numerosity requirement, a plaintiff 'need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates.'" *Simpson*, 149 F.R.D. at 98. The Fourth Circuit has upheld classes consisting of as few as 18 members, *Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and has also observed that the "numerosity" requirement is "easily satisf[ied]" at a level of 480 potential class members, *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993). *See also Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998) (citing cases and noting that "generally, courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement"); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) (observing that "a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable").

Here, the Default Judgment Class is all "persons or entities" that "purchased or otherwise acquired publicly traded Instadose securities" over a period of approximately one year. Instadose is a publicly traded company that had 75,000,000 shares of common stock issued and outstanding as of February 24, 2021, according to its 2020 Annual Report. *See* Declaration of Elizabeth K. Tripodi ("Tripodi Decl."), Exhibit ("Ex.") 1 (excerpt from Instadose Annual Report, filed on SEC Form 10-K on February 25, 2021). Furthermore, the number of shares traded during the Class

Period was 540,256.[9]  While the exact number of Default Judgment Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class.  Thus, the numerosity requirement has been met.  *See In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104-05 (E.D. Va. 2009) ("The numerosity requirement is seldom disputed in securities fraud cases given the large quantity of shareholders who purchase stock in reliance upon a company's public statements."); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").

### 2. Commonality Is Satisfied

"In ascertaining whether [a plaintiff] satisfies the commonality requirement, the court must not consider the merits of the substantive claims." *Simpson*, 149 F.R.D. at 99. "The court must only verify the existence of common questions of law or fact for each claim to be certified." *Id*. Commonality does not require class members to share all issues, simply a ***single*** common issue. *See Hotel Properties*, 151 F.R.D. at 601 ("The requirement for common questions of law or fact for a class action is achieved with the existence of a common question of either fact or law, although not all questions of law and fact raised need be in common."); *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 344 (4th Cir. 1998) (Rule 23 does not "require that members of the class have identical factual and legal claims in all respects").  "The commonality requirement is relatively easy to satisfy." *Buchanan v. Consol. Stores Corp*., 217 F.R.D. 178, 187 (D. Md. 2003).

---

[9]  Class Period trading information and market cap information was obtained from OTC Markets Group, a firm that provides data about over the counter traded securities.

In actions alleging that a class of shareholders were damaged by the same scheme of wrongful conduct engaged in by the defendants, the requirement of Rule 23(a)(2) will likely be satisfied. *See Hotel Properties*, 151 F.R.D. at 602; *Kirschner*, 139 F.R.D. at 78; *see also Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000) (commonality requirement "has been applied permissively by courts in the context of securities fraud litigation"). Here, the Complaint alleges numerous questions of law and fact common to the Class, including the following:

- whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Instadose;

- whether Wilshire caused Instadose to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Instadose securities during the Class Period were artificially inflated because of Defendants' conduct; and

- whether the members of the Default Judgment Class have sustained damages and, if so, what is the proper measure of damages.

*See* ¶ 55.

"Each of these common questions identified by [Plaintiffs] is independently sufficient to satisfy the commonality requirement of Rule 23(a)(2)." *See, e.g.*, *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (plaintiff had demonstrated commonality where it

identified common questions such as "whether defendants were fiduciaries," "whether Defendants breached their fiduciary duty," and whether class members were "damaged by these alleged breaches of fiduciary duty."). *See also BearingPoint*, 232 F.R.D. at 539 ("Members of a proposed class in a securities case are especially likely to share common claims and defenses.").

### 3.     Typicality Is Satisfied

The typicality requirement is met "when each class member's claim arises from the *same course of events,* and each class member makes similar legal arguments to prove the defendant's liability." *In re Mills Corp. Sec. Litig.*, C.A. No. 1:06-77 (GBL), 2006 U.S. Dist. LEXIS 50485, at *6 (E.D. Va. May 30, 2006) (emphasis original). Typicality does not require that the claims be "identical," but rather "this requirement is satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the named parties and the other members of the class." *Kirschner*, 139 F.R.D. at 79.

Here, Plaintiffs' claims are typical because they (1) purchased Instadose securities during the Class Period; (2) were adversely affected by Defendants' alleged false and misleading statements; and (3) suffered damages thereby. Further, Plaintiffs' injuries arose from the same course of conduct as the other members of the Default Judgment Class, their legal theories are the same as those of the members of the Default Judgment Class, and Plaintiffs' claims are not subject to any unique defenses. *See Kelleher v. ADVO, Inc.*, No. 3:06CV01442(AVC), 2009 U.S. Dist. LEXIS 68914, at *13 (D. Conn. Mar. 30, 2009) (Plaintiff's claims were typical because "Kelleher and all of the proposed class members allegedly suffered damages as a result of purchasing Advo stock in reliance on the false statements made by the defendants.").

Moreover, the Court appointed Plaintiffs as Lead Plaintiffs under the PSLRA, *see* 15 U.S.C. § 78u-4(a)(3)(B), based in part on a finding that Plaintiffs' claims met Rule 23's typicality requirements. ECF No. 25. The Court should affirm that order in finding Plaintiffs' claims typical.

### 4.     Adequacy Is Satisfied

The adequacy requirement is met with a two-prong test: (1) the interests of the plaintiff and other members of the class coincide, and (2) the plaintiff and its attorney will vigorously prosecute the action. *See Kirschner*, 139 F.R.D. at 79. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiffs and their selection of counsel readily satisfy both prongs. First, Plaintiffs' interests are co-extensive with, rather than antagonistic to, those of the Default Judgment Class. Plaintiffs, like all Default Judgment Class members, were damaged as a result of Defendants' unlawful conduct and lost money on their purchases of Instadose securities during the Class Period. *See, e.g.*, ECF No. 17-4 (Plaintiffs' combined estimated losses are $139,690.86). Plaintiffs and the proposed Default Judgment Class have precisely the same interest in achieving the maximum recovery possible. *See In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 109 (D. Conn. 2005) ("The named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of Celera common stock who suffered significant losses as a result of the investments."). The Court so concluded when it appointed Plaintiffs as Lead Plaintiff. ECF No. 25. It should affirm that order.

Second, Plaintiffs have chosen qualified, experienced counsel who are fully capable of prosecuting this Action. BES, and local counsel, LK, have decades of experience in the area of complex litigation, have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, and have the resources to prosecute this matter to the greatest recovery possible for the Default Judgment Class. *See* ECF Nos. 17-7 and 17-8 (firm resumes); *infra* at Section III. *See also e.g.*, *Sudunagunta v. NantKwest, Inc.*, No. CV-16-1947-MWF (JEMx), 2018

U.S. Dist. LEXIS 137084, at *28 (C.D. Cal. Aug. 13, 2018) (certifying class and appointing BES as Co-Class Counsel).

### B.   The Rule 23(b) Requirements Are Also Satisfied

The conditions of Rule 23(b)(3) are also satisfied here.  Rule 23(b)(3) authorizes class certification where: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Moreover, "[c]lass actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005).

### 1.   Common Questions of Law and Fact<br>Predominate Over Individual Issues

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual class members. *Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  The "predominance" requirement does not "demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *Stone*, 139 F.R.D. at 331 (quoting 3B Moore and Kennedy, *Moore's Federal Practice* and ¶ 23.06-1 at 23-159, 160).  "The inquiry with respect to the predominance standard focuses on the issue of liability, and 'if the liability issue is common to the class, common questions are held to predominate over individual ones.'" *BearingPoint*, 232 F.R.D. at 542.  "Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625.

16

Where, as here, plaintiffs allege a "common course of conduct" consisting of misrepresentations and omissions that affect all members of the Default Judgment Class in the same manner, common questions predominate. *Blackie v. Barrack*, 524 F.2d 891, 905-08 (9th Cir. 1975); *In re Alco Int'l Grp., Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994). "Securities fraud cases are particularly appropriate candidates for treatment under Rule 23(b)(3) since the elements of the cause of action generally relate to the acts or omissions of the defendants and because individual damages might be too paltry to justify bringing individual cases." *BearingPoint*, 232 F.R.D. at 542.

Here, as discussed *supra*, there are numerous common questions of law and fact as to the members of the Default Judgment Class, and at this time, Plaintiffs only seek to obtain class certification to obtain a default judgment. Accordingly, all facts in the Complaint will be presumed true and determining liability will be straightforward, as discussed further below.

### 2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudicating of the controversy." The factors relevant to this inquiry are:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*BearingPoint*, 232 F.R.D. at 544.

Each factor is satisfied here. The Default Judgment Class members are too numerous and the typical claim is too small for each Default Judgment Class member to maintain a separate action. *In re MF Global Holdings Ltd. Inv. Litig.*, No. 11 Civ. 7866(VM), 310 F.R.D. 230,

17

239(S.D.N.Y. 2015) ("the alternatives [to a class action] are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake'").  Further, this Court is an appropriate forum because a substantial part of the alleged misconduct occurred in this district.  Moreover, the geographical dispersion of Default Judgment Class members arising from Instadose securities trading on a national exchange makes it desirable that litigation of the claims involved be concentrated in this forum.  Finally, Plaintiffs and their counsel foresee no management difficulties that would preclude this action from being maintained as a class action, as securities fraud cases usually proceed.  *See In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810, at *30 (E.D. Va. Sept. 4, 2020) (proceeding as a class is generally the superior mechanism to adjudicate public traded securities claims); *BearingPoint*, 232 F.R.D. at 545 ("class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws").  "In general, securities suits . . . easily satisfy the superiority requirement of Rule 23."  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 187 (S.D.N.Y. 2008).

## III.    The Court Should Appoint Bragar Eagel & Squire, P.C. as Class Counsel

Rule 23(g)(1)(A) sets out the factors a court must consider in appointing Class Counsel, including: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  As described above, BES has substantial experience representing class members and is currently acting as lead counsel in several federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of BES have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  *See, e.g., Subramanian v.*

*Watford*, C.A. No. 20-cv-02652-CMA-STV, 2021 U.S. Dist. LEXIS 81823, at *10 (D. Colo. Apr. 29, 2021) (noting BES's qualifications, experience, and ability to conduct the litigation); *Saint Jermain v. Fluidigm Corp.*, No. 20-cv-06617-PJH, 2020 U.S. Dist. LEXIS 234646, at *12 (N.D. Cal. Dec. 14, 2020) (appointing BES as lead counsel); *Turnofsky v. electroCore, Inc.*, Civ. No. 19-18400, 2020 U.S. Dist. LEXIS 72313, at *16 (D.N.J. Apr. 24, 2020) (appointing BES as lead counsel, noting the firm's experience with securities class actions).

## IV.    The Court Should Enter A Default Judgment

"Where[, as here,] a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2)." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012).  Although the "Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,' but default judgment may be appropriate where a party is unresponsive." *Id.* at 373; *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be *liberally exercised*, in entering such [default] judgments . . . .").  Here, the clerk has entered defaults under Rule 55(a) as to Instadose and Wilshire.  ECF No. 28.  Plaintiffs are now seeking a default judgment from the Court under Rule 55(b).

Once a default has been entered, "the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Optimum Welding*, 285 F.R.D. at 373. Thus, the default itself establishes the defendant's liability.  *See Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983).[10]  "A defendant in default admits

---

[10]  It is improper for the court to consider liability issues involving a defaulted defendant if it does not first give the plaintiff notice that the merits of the case will be addressed.  *Black v. Lane*, 22

the factual allegations in the Complaint." *People's United Equip. Fin. Corp. v. Wright*, C.A. No. 1:11cv0249 (LMB/JFA), 2011 U.S. Dist. LEXIS 73107, at *9-10 (E.D. Va. June 9, 2011) (citing Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied.")); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the Complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.").

### C.      Plaintiffs Have Stated A Claim Upon Which Relief Can Be Granted

"To prevail under § 10(b) of the Securities Exchange Act and Rule 10b-5, a plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *BearingPoint*, 232 F.R.D. at 539. Plaintiffs can offer generalized proof to show that Defendants made a variety of misleading statements. Plaintiffs can also use generalized proof to demonstrate Defendants' state of mind, and damages. The Complaint adequately and specifically alleges how each of the Defendants violated Sections 10(b) and 20(a) of the Exchange Act.

### 1.      The Complaint Alleges Actionable Misstatements and Omissions

The Complaint demonstrates that statements made during the Class Period regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada were false and misleading. *E.g.*, ¶ 24. For example, Defendants stated that the Business Combination was subject to a number of conditions, including no material adverse change occurring at the

---

F.3d 1395, 1398 (7th Cir. 1994); *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 3 (1st Cir. 2002).

Company or Instadose Canada. *Id.* Defendants made this statement several times during the Class Period, including after the OSC charged Sanders quasi-criminally for fraud in relation to his role as CEO and Chairman of Instadose Canada and alleged that Instadose Canada had materially misrepresented the nature of its business. ¶¶ 33-34. Yet Defendants failed to disclose this material fact to investors. ¶ 47. The September 2021 Form 8-K highlighted the benefits that the business operations of Instadose Canada would bring to Instadose, failing to disclose the adverse information regarding Sanders. ¶ 39. The SEC had "questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including . . . the operations of Instadose[]'s Canadian affiliate" (¶ 48) and yet just a month prior, Defendants made numerous material false and misleading statements touting the Business Combination positively and consummating it. ¶¶ 40-46.

Disclosure is required when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading" to the reasonable investor. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Here, not only did Defendants fail to disclose the above material adverse information, the Company's statements regarding related party transactions were also false and misleading because they failed to disclose impermissible trading activity by control persons of the Company. *E.g.*, ¶¶ 41-43, 48.

### 2. The Complaint Adequately Pleads A Strong Inference of Scienter

Under the PSLRA, a plaintiff must state particular facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A court must "accept all factual allegations in the complaint as true" and determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (emphasis original). The inference "need not be

21

irrefutable . . . or even the 'most plausible of competing inferences,'" only at least as likely as any other inference. *Id.* at 324; *see also Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 601 (E.D. Va. 2015) (the complaint need only allege "facts that constitute circumstantial evidence of either reckless or conscious behavior"); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 617 (S.D.N.Y. 2015) ("plaintiff does not need a smoking gun to allege . . . a strong inference of scienter").  Allegations that support a strong inference of scienter include "(1) that a defendant's allegedly fraudulent conduct involved 'core operations' of the business; (2) defendants' positions and level of personal involvement within the company; (3) statements regarding compliance; and (4) motive and opportunity of corporate officers." *Lumber Liquidators*, 155 F. Supp. 3d at 606.

When the allegations in the Complaint are viewed together, it is clear that Defendants were, at minimum, reckless in defrauding investors.  For example, the Complaint alleges that because of his position as the senior manager and a director, Wilshire had knowledge of the details of Instadose's internal affairs.  *E.g.*, ¶¶ 17, 65.  In addition, because Wilshire was a high-ranking officer at Instadose Canada when he joined Instadose, he would have been aware of that Company's internal affairs, as well as the allegations and charges against Sanders regarding the divesture of investor funds and material misrepresentations regarding the nature of Instadose Canada's business.  The OSC announced the quasi-criminal charges against Sanders on July 9, 2021, and Instadose filed a Form 10-Q just five days later on July 14, 2021, reiterating its intention to consummate the Business Combination but making no mention of the charges.  ¶¶ 33-34.  Wilshire's "knowledge can be imputed to [Instadose] because he was acting as an agent of the company, and he 'acted with the required state of mind, *i.e.* made a false or misleading statement of material fact with scienter.'"  *Lumber Liquidators*, 155 F. Supp. 3d at 608.

**3.    The Complaint Adequately Alleges Reliance and Loss Causation**

Plaintiffs can establish reliance based on the fraud-on-the-market theory articulated in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988), which entitles Plaintiffs to a "presumption of reliance, based on the proposition that 'an investor who buys or sells stock at the price set by the market does so in reliance on the integrity of the market price.'" *BearingPoint*, 232 F.R.D. at 539. "[U]nder the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public.  The public information is reflected in the market price of the security.  Then it can be assumed that an investor who buys or sells stock at the market price relies upon the statement." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009). The Fourth Circuit considers several factors in determining market efficiency, such as "whether the security is actively traded, the volume of trades, and the extent to which it is followed by market professionals." *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 409 (E.D. Va. 2015).  The "factors" are "merely instructive in this inquiry" and "no one factor is more important than another[.]"  *Id.*  Here, during the Class Period, Instadose's average market cap was $1,052,338,706.30 with a maximum market cap on November 5, 2021, of $3,543,806,700.00. *See* n.9.  The number of shares traded during the Class Period was 540,256 and the market value of the shares traded was over $13.8 million.  *Id.*  Therefore, Instadose was traded in an efficient market.

Furthermore, a presumption of reliance pursuant to *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), applies here.  The *Affiliated Ute* presumption applies to claims involving a failure to disclose.  *Id.* at 153; *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  In such circumstances, "positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute*, 406 U.S. at 153-54.  Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have

23

considered them important in the making of [their] decision." *Id.* The *Affiliated Ute* presumption reflects the reality that where the information is omitted, "reliance as a practical matter is impossible to prove." *In re Facebook, Inc., IPO & Sec. & Deriv. Litig.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013). And because materiality itself is a common question, a plaintiff need not prove materiality to invoke the *Affiliated Ute* presumption at class certification; it need only be alleged. *See Amgen*, 568 U.S. at 467 ("[B]ecause [t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor, materiality can be proved through evidence common to the class.").

Here, the Complaint primarily alleges omissions, specifically that Defendants failed to disclose that: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) Instadose's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; and (iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action. ¶ 47. Plaintiffs were relying upon the integrity of the process leading up to the Business Combination and the reasonable assumption that there was no improper insider trading. *See, e.g.*, *Burt v. Maasberg*, C.A. No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732, at *80 (D. Md. Mar. 31, 2013) (presumption of reliance where officer/director defendants failed to disclose their intent to take control of company); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 864 (D. Md. 2005) (presumption of reliance where defendants failed "to disclose that they were permitting favored customers to engage in late trades and market-timed transactions").

"[T]o show loss causation, a securities-fraud plaintiff must demonstrate that the defendant's misrepresentation was a *substantial* cause of the loss by showing a direct or proximate

relationship between the loss and the misrepresentation," *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005) (emphasis original), but "[t]he facts alleged in the complaint . . . need not conclusively show that the securities' decline in value is attributable solely to the alleged fraud rather than to other intervening factors," *Mut. Funds Inv. Litig.*, 566 F.3d at 128.  Here, the price of Instadose shares declined almost 92% after the truth was revealed to the market through the SEC's Order of Suspension of Trading.  ¶¶ 48-49; *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 478 (4th Cir. 2006) ("to properly plead loss causation in a fraud claim, a plaintiff must allege that the price fell after the truth came to light about a misrepresentation, and that the plaintiff suffered damages as a result").

### 4.      The Complaint Adequately Alleges Control Person Liability

"To plead the control requirement, a plaintiff must plead[ ] facts showing that the controlling defendant had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Mut. Funds Inv. Litig.*, 566 F.3d at 130 (alteration original).  However, "[c]ourts adopt a liberal construction whereby dismissal is granted only when a plaintiff cannot plead any facts from which it can be reasonably inferred that the defendant was a 'control person.'" *Lumber Liquidators*, 155 F. Supp. 3d at 603.  Moreover, all that is required to assert control person liability is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

To allege a Section 20(a) violation, a plaintiff must state a primary violation of Section 10(b) and that the defendant was in a position of direct or indirect control over the primary violator. 15 U.S.C. § 78t(a).  As illustrated above, the Complaint adequately alleges a primary violation of the Exchange Act, satisfying the first element.  Second, the Complaint alleges that Wilshire, as a director and President, Principal Executive Officer, Principal Financial Officer, and Principal

25

Accounting Officer during the Class Period, was in a position of control. *See, e.g.*, ¶¶ 16-17, 65-66, 71-75. In addition, Wilshire signed the majority of SEC filings alleged to be misleading, as well as the certifications pursuant to the Sarbanes-Oxley Act of 2002. ¶¶ 24, 28, 32, 37, 38, 44, 46. *See Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 973 (E.D. Va. 2020) (control person liability adequately alleged where plaintiffs highlighted defendants' "roles in signing two allegedly misleading Forms 10-K"); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008) (control sufficiently pled where defendants were directors who signed 10-K with false statements, one was on the audit committee, and noting that such analysis is fact-intensive).

### D. Plaintiffs and the Default Judgment Class Are Substantially Prejudiced By the Delay

"To determine if the non-defaulting party was prejudiced, courts examine whether the delay [caused by the default]: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (alteration original).

Despite proper service, their knowledge of, and public acknowledgment of this Action, Defendants have simply never appeared in this case. It was filed more than a year ago and Plaintiffs and the Default Judgment Class have received no recompense for their losses incurred when Instadose's share price was decimated by the SEC's temporary suspension of trading due to Defendants' lack of transparency into the Business Combination and potential insider trading issues. Absent default judgment, "there are no additional steps available to secure relief in this

26

Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 06 Civ. 14226 (RLC), 2008 U.S. Dist. LEXIS 107062 (S.D.N.Y. Oct. 27, 2008).

### E.      The Default Is Willful

"[S]ome district courts within the Fourth Circuit consider the 'personal responsibility' factor the most important" in deciding the question of a default judgment. *Burton v. TJX Cos.*, No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, at *6 (E.D. Va. May 1, 2008). Here, there is no question that the default is willful. Service was effectuated on Defendants' Registered Agent, and then counsel for DeLuca contacted Kris Osborne, who was authorized to accept service on behalf of Defendants' Registered Agent, by telephone and confirmed that the summonses and Complaint were forwarded to Defendants. Moreover, the Company has recognized the existence of the Action in multiple public filings with the SEC. A Form 8-K filed with the SEC on January 7, 2022 states, in relevant part:

> On December 30, 2021, Michael Deluca, individual and on behalf of all others similarly situated filed a class action complaint in the United States District Court, Eastern District of Virginia Case #2:21-cv-00675 against the Registrant and Terry Wilshire, its Chief Executive Officer. The complaint alleges violations of Section 10(b) of the Exchange Act and 10(b)5 promulgated thereunder, violations of Section 20(a) of the Exchange Act against Wilshire.
>
> The plaintiff seeks judgment as follows:
>
> > (i) Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;
> > (ii) Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;
> > (iii) Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and
> > (iv) Awarding such other and further relief as the Court may deem just and proper.
>
> ***The Registrant has obtained counsel to dispute the charges against itself and Mr. Wilshire.***

27

Tripodi Decl., Ex. 2.  Additionally, a Form 10-K filed with the SEC on March 15, 2022 states, in relevant part:

> On December 30, 2021, Michael Deluca, a purported stockholder of the Company, filed a putative class action complaint in the U.S. District Court, Eastern District of Virginia, naming as defendants the Company and former CEO, Terry Wilshire.  The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (and SEC Rule 10b-5 promulgated thereunder), as well as a control person claim under Section 20(a) of the Exchange Act against Wilshire.  The complaint alleges that defendants made materially false and misleading misrepresentations and omissions in SEC filings upon which plaintiff's purportedly relied in purchasing shares of the Company and that plaintiff's suffered harm when the price of the stock declined and the purported truth emerged.  Plaintiff seeks various forms of relief, including alleged damages, attorneys' fees and costs and other relief.  ***The Company intends to vigorously defend against this lawsuit, and at this time, the Company cannot predict the outcome or impact of the litigation.***

Tripodi Decl., Ex. 3; *Gonzalez v. Spunk Indus., Inc.*, C.A. No. ELH-18-2935, 2019 U.S. Dist. LEXIS 156489, at *6 n.2 (D. Md. Sept. 13, 2019) (quoting *Williams v. Advert. Sex, LLC*, 410 F. App'x 578, 579-80 (4th Cir. 2011)) ("We note that the Default Defendants are commercial enterprises . . . .  These relatively sophisticated litigants pursued a litigation strategy that carried the real possibility of having a default judgment entered against them.  Nonetheless, the Default Defendants failed to enter an appearance before the district court or this court at their own peril.").

## F.   Defendants Have Not Asserted Any Meritorious Defenses

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Progressive Advanced Ins. Co. v. Holt*, C.A. No. 2:22cv321, 2023 U.S. Dist. LEXIS 27625, at *8 (E.D. Va. Feb. 17, 2023). Defendants' failure to answer the Complaint precludes them from raising any "meritorious defense" to the claims asserted against them and Plaintiffs' allegations are deemed to be admitted. *See* Fed. R. Civ. P. 8(b)(6); *see also Mullinex v. John Crane Inc.*, C.A. No. 4:18-cv-33, 2022 U.S. Dist. LEXIS 193481, at *10 (E.D. Va. Oct. 24, 2022) ("The principal thrust of the Federal Rules is to expedite trial of the issues on the merits and in order to do so defendants must assist in the

28

formulation of the issues by answering plaintiffs' complaint or run the risk of default judgment.");

*HICA Educ. Loan Corp. v. Bolte*, No. 11 Civ. 6404 (LTS)(GWG), 2012 U.S. Dist. LEXIS 17288, at *4 (S.D.N.Y. Feb. 10, 2012) ("[T]he Court is unable to determine whether Defendant has a meritorious defense to Plaintiff's allegations because he has presented no such defense to the Court.").[11]

**V.     The Class is Entitled to $8,479,189.95 in Damages**

Expert opinion evidence is the proper method for establishing damages in cases involving securities fraud.  *See generally*, Rule 702, *Federal Rules of Evidence*, which permits a witness to testify as an expert where the court determines that "specialized knowledge will assist trier of fact to understand evidence or to determine fact in issue."  In addition, a district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations.  Fed. R. Civ. P. 55(b)(2)(B)-(C).

Here, Plaintiffs' damages expert has calculated Class damages to be $8,479,189.95 using a two-trader model.  *See* Tripodi Decl., Ex. 4 (Declaration of Daniel S. Bettencourt ("Bettencourt Declaration").  *See also In re Cendant Corp. Sec. Litig*., 109 F. Supp. 2d 235, 171 (D.N.J. 2000) ("The use of trading models is accepted to create an estimate of aggregate damages.").  The two-trader proportional trading model estimates the requisite purchase and sale dates for all shares of common stock traded during a period of time, and is commonly used to provide estimates of aggregate damages in securities cases. Bettencourt Decl. at ¶ 13.  The two-trader model recognizes that most stock trading volume is attributable to a relatively small subset of traders, while the

---

[11] *See also*, *Aero Norfolk, LLC v. Phila. Truck Lines, Inc*., C.A. No. 2:21cv101 (RCY), 2022 U.S. Dist. LEXIS 50504, at *4 (E.D. Va. Mar. 21, 2022) (defendant's failure "to proffer any evidence of its 'meritorious defense'" "failed to meet the extraordinarily low bar set by this factor").

remaining investors tend to have longer holding periods. *Id.* at ¶ 14. Accordingly, market participants are divided into two groups – "traders," who trade frequently, and "holders," who trade less frequently. *Id.* The model employs parameter estimates for the percentages of outstanding shares held by each of the two groups, and the greater frequency of "trader" trades relative to "holder" trades. *Id.* at ¶ 15. The model then uses reported trading volume to estimate when shares purchased were subsequently sold. *Id.* at ¶ 16. Essentially, the model estimates the probability of any particular share being traded on a particular day. *Id.* It applies this probability to estimate the number of shares purchased on each prior day that are re-traded on each respective subsequent day. *Id.* The Bettencourt Declaration explains in detail how the two-trader model, as applied here, results in Class-wide damages of $8,479,189.95. *Id.* at ¶¶ 24-33.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) certify the Default Judgment Class; (ii) appoint Plaintiffs as Class Representatives; (iii) approve BES as Class Counsel; (iv) enter a default judgment as to Defendants; and (v) grant such further relief as the Court deems necessary.

DATED: February 28, 2023

Respectfully submitted,

By: */s/ Elizabeth K. Tripodi*
Elizabeth K. Tripodi (VA Bar #73483)
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, D.C., 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
Email: etripodi@zlk.com

*Local Counsel for Lead Plaintiffs and the Class*

Melissa A. Fortunato
Marion C. Passmore
**BRAGAR EAGEL & SQUIRE, P.C.**
810 Seventh Avenue, Suite 620

New York, NY 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email:  fortunato@bespc.com
        passmore@bespc.com

*Counsel for Lead Plaintiffs and the Class*

31

## CERTIFICATE OF SERVICE

I, Elizabeth K. Tripodi, hereby certify that the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 28th day of February, 2023.

/s/ Elizabeth K. Tripodi
Elizabeth K. Tripodi

32

<u>**CERTIFICATE OF SERVICE**</u>

I, Melissa A. Fortunato, hereby certify that on the 28th day of February, 2023, I caused to

be mailed full and complete copies of the foregoing via U.S. Mail, first-class postage paid, to the

following:

> Instadose Pharma Corp.
> 1545 Crossways Boulevard, Suite 250
> Chesapeake, VA 23330
>
> Terry Wilshire
> 1545 Crossways Boulevard, Suite 250
> Chesapeake, VA 23330
>
> Instadose Pharma Corp. f/k/a Mikrocoze, Inc.
> and Terry Wilshire
> c/o State Agent and Transfer Syndicate, Inc.
> 112 North Curry Street
> Carson City, Nevada 89703-4934
>
> Instadose Pharma Corp.
> 5500 North Service Road, Suite 301
> Burlington, Ontario
> Canada, L7L 6W6
>
> Instadose Pharma Corp.
> Attn: Terry Wilshire
> 5500 North Service Road, Suite 301
> Burlington, Ontario
> Canada, L7L 6W6

*/s/ Melissa A. Fortunato*
Melissa A. Fortunato

33