## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MICHELE DELUCA, *individually and on behalf of all others similarly situated*,

    Plaintiff,

    v.

INSTADOSE PHARMA CORP. f/k/a MIKROCOZE, INC. and TERRY WILSHIRE,

    Defendants.

Case No. 2:21-cv-675

## MEMORANDUM OPINION & ORDER

Before the Court is the plaintiffs' Motion for Class Certification and Default Judgment. ECF No. 32 (motion), 33 (memorandum). For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

On December 7, 2020, Defendant Instadose Pharma Corp., then known as Mikrocoze, Inc., entered into a non-binding letter of intent with Instadose Pharma Corp. ("Instadose Canada"), a Canada-based cannabis producer, to acquire 100% of the outstanding common shares of Instadose Canada ("the transaction").[1] ECF No. 1 ¶ 3. Defendant Instadose "was at all relevant times classified as a 'shell' company."

---

[1] On March 11, 2021, Defendant Instadose changed its name from Mikrocoze to Instadose Pharma Corp., which is the same name borne by the Canadian entity that it sought to acquire. ECF No. 1 ¶ 23. For clarity, the Court refers to the Canadian entity as Instadose Canada and the US entity as Defendant Instadose.

*Id.* ¶ 2. Defendant Instadose announced on November 6, 2020, that Sukhmanjit Singh, its Chief Executive Officer, Chief Financial Officer, President, Treasurer, Secretary, and Director, had resigned. *Id.* ¶ 20. In the same announcement, Defendant Instadose indicated that Defendant Terry Wilshire, "purported award-winning risk and fraud mitigation manager currently responsible for Global Risk assessment and Corporate Social Responsibility at Instadose Pharm Corp.—*i.e.*, most likely, Instadose Canada," would become President and Member of the Board of Directors of Defendant Instadose. *Id.* ¶ 21. (quotation marks omitted).

Defendant Instadose filed a Form 8-K with the SEC on December 8, 2020, indicating its intent to acquire 100% of the outstanding common shares of Instadose Canada. ECF No. 1 ¶ 24. Defendant Instadose filed a Form 10-K on February 25, 2021, and a Form 10-Q on April 14, 2021, each of which referenced the transaction and made various representations about Defendant Instadose's finances. *Id.* ¶¶ 25–32.

On July 9, 2021, the Ontario Securities Commission ("OSC") in Canada announced that the Chairman and CEO of Instadose Canada, Grant Ferdinand Sanders, had been charged with one count of fraud in relation to his role at Instadose Canada. ECF No. 1 ¶ 33. The OSC "alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business." *Id.* ¶ 33.

On July 14, 2021, Defendant Instadose filed a Form 10-Q with the SEC that referenced the transaction and noted that the transaction was expected to close on

July 31, 2021. ECF No. 1 ¶ 34. The filing did not disclose any information regarding the OSC charges against the CEO of Instadose Canada. On September 22, 2021, Defendant Instadose filed a Form 8-K with the SEC, indicating that Defendant Instadose and Instadose Canada had "entered into a plan of arrangement" on September 1, 2021, under the terms of which Defendant Instadose would acquire all issued and outstanding shares of Instadose Canada once certain conditions were satisfied. *Id.* ¶ 38 (quotation marks omitted). The Form 8-K also "highlighted the business operations of Instadose Canada, indicating to investors the purported benefits that would flow to [Defendant] Instadose following consummation of the [transaction]." *Id.* ¶ 39.

Defendant Instadose filed a Form 10-Q with the SEC on October 13, 2021, which provided, *inter alia*, an update on the transaction. ECF No. 1 ¶ 40. On October 15, 2021, Instadose Canada "announced that an overwhelming majority of its shareholders" voted in favor of the transaction. *Id.* ¶ 45. On October 21, 2021, Defendant Instadose filed a Form 8-K with the SEC that indicated Instadose Canada had applied to a Canadian court for approval of the transaction and that the request for approval had been granted. *Id.* ¶ 46.

During after-market hours on November 24, 2021, Defendant Instadose filed a Form 8-K, disclosing that the SEC had suspended trading of Instadose securities "because of various issues with its business, trading activity, and Canadian affiliate." ECF No. 1 ¶ 48. The SEC's Order of Suspension of Trading stated, in part, that:

> It appears to the SEC that the public interest and the protection of investors require a suspension in the trading of the securities of

> Instadose. . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose's Canadian affiliate . . . .

*Id.* (alterations accepted). On this news, Defendant Instadose's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021. *Id.* ¶ 49.

Plaintiff Michele Deluca filed the complaint in this case on December 30, 2021. ECF No. 1. The defendants did not respond to the complaint, and the Clerk entered a default on August 25, 2022. ECF No. 28. On February 28, 2022, several competing motions for appointment of lead plaintiff and counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B) were filed. *See* ECF Nos. 7, 11, 14, 17. The Honorable Roderick C. Young, to whom this case was previously assigned, issued an order on July 29, 2022, granting the motion filed by Plaintiffs Mavis and Tim Brown and their counsel, Brager Eagel & Squire, P.C. and Levi & Korsinsky. ECF Nos. 25 (opinion) and 26 (order).

This case was reassigned to the Honorable Elizabeth W. Hanes on August 23, 2022. On January 18, 2023, Judge Hanes ordered the plaintiffs to file a motion for default judgment on or before February 28, 2023. ECF No. 31. The plaintiffs filed the instant motion for class certification and default judgment on February 28, 2023. ECF No. 32. The case was reassigned to this Court on April 13, 2023. The Court ordered supplemental briefing on June 9, 2023 (ECF No. 35), which the plaintiffs filed on June 22, 2023 (ECF No. 36). The Court subsequently held a hearing on August 2, 2023, with plaintiffs' counsel to address the instant motion. ECF No. 37.

## II.    LEGAL STANDARDS

### A.    Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23, which provides four prerequisites that must be met before a class can be certified:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy, respectively. *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538–41 (E.D. Va. 2006). The party moving for class certification bears the burden of establishing that each of these requirements is met. *Id.* at 537.

After the requirements of Rule 23(a) have been met, the party moving for class certification must show that the proposed class meets one of the requirements described in Rule 23(b). *BearingPoint,* 232 F.R.D. at 537. In securities fraud cases, parties typically meet this requirement by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When evaluating a motion for class certification, a court must accept as true the facts pleaded in the complaint. *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538,

544 (E.D. Va. 2000). A court must not "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## B.    Default Judgment

Whether to grant a motion for default judgment is a matter for the court's discretion. *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Co.*, 383 F.2d 249, 251 (4th Cir. 1967); *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014); *Vick v. Wong*, 263 F.R.D. 325, 329 (E.D. Va. 2009). The Fourth Circuit strongly prefers that courts adjudicate cases on the merits and has encouraged district courts to construe Federal Rule of Civil Procedure 55—which governs default judgment— liberally in order to deny motions for default judgment. *See, e.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010); *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). However, default judgment is warranted when a defendant fails to appear or participate. *Chafin v. Chafin*, 568 U.S. 165, 175 (2013); *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022).

Because a defendant in default has admitted the facts alleged in the complaint, the Court must determine whether the plaintiff's allegations are sufficient for judgment to be entered. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In other words, the Court should decide whether the complaint contains adequate factual material to state a claim to relief that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Grabert*, 8 F. Supp. 3d at 736 (applying the *Twombly* and *Iqbal* standard in the context of default judgment).

## III.   ANALYSIS

### A.   Class Certification

#### i.   *Class Period*

Before proceeding with its analysis of the Rule 23(a) factors, the Court is compelled to address a preliminary issue: the relevant class period. "At the class certification stage, courts must not inquire into the merits to determine the adequacy of a class period." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 88 (D.N.J. 2019); *see also, e.g.*, *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 135 (S.D.N.Y. 2019) (reserving question of class period end date at the class certification stage to the "summary judgment stage or at trial"). Instead, "courts need only 'look to the pleadings to determine whether there is sufficient evidence to support an allegation that formed the basis for a class period start date.'" *Roofer's Pension Fund*, 333 F.R.D. at 88–89 (quoting *Wilson v. LSB Indus., Inc.*, No. 1:15cv7614, 2018 WL 3913115, at *19–20 (S.D.N.Y. Aug. 13, 2018)) (alterations accepted). In other words, "[courts] are called upon to determine only whether plaintiffs have *adequately* alleged in their complaint an *actionable* misstatement or omission for the start of the class period, and whether that allegation remains a potential basis on which plaintiffs may recover relief." *Wilson*, 2018 WL 3913115, at *20.

Thus, it appears that courts are not compelled to "rubber stamp" a plaintiff's proposed class period based solely on a bare allegation of fraud. Rather, courts must look to whether the plaintiff has "adequately" alleged an "actionable" misstatement or omission that marks the start of the class period. *Wilson*, 2018 WL 3913115 at *20. The Court takes this to mean that it must analyze the allegations of the complaint as it would in the posture of a motion to dismiss and take only factual allegations as true.[2] The plaintiffs proposed default judgment class is defined as:

> All persons and entities that purchased or otherwise acquired publicly traded Instadose securities between December 8, 2020 and November 24, 2021, both dates inclusive.

ECF No. 33 at 16 (footnote omitted). The Court finds that this period should be shortened to between July 14, 2021, and November 24, 2021, both dates inclusive, for the following reasons.

At the hearing held on the instant motion, the plaintiffs clarified that they are only alleging three omissions:

> (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada;

---

[2] Even if this statement is not broadly applicable to all class certification contexts, the Court finds that it is true here given the somewhat unique procedural posture of this case. There will be no summary judgment or trial stage at which to assess the proper class period—the current record, as it stands, is all the Court has to consider. On the motion for default judgment, the Court will be required to apply the same standard it would apply when evaluating a motion to dismiss. *Ryan*, 253 F.3d at 780 (on a motion for default judgment, "[t]he court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought in this action."). Thus, the Court finds that it is appropriate to apply that standard here in assessing the proper class period.

(ii) Instadose's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; and

(iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action.

ECF No. 33 at 9–10; ECF No. 41 at 5:9–6:10. The plaintiffs indicated at the hearing that the third alleged omission, increased risk of regulatory scrutiny, "flows" from the other two. ECF No. 41 at 30:11–31:10. Thus, the Court will look to the complaint to ascertain whether the plaintiffs have adequately pleaded the first two alleged omissions—inadequate due diligence and inadequate internal controls—because the third alleged omission cannot be actionable without one of the other two. For any of these omissions to be actionable, the plaintiffs must ultimately meet four factors: "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir. 1999) (quoting *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1261 (4th Cir. 1993)).

Beginning with the alleged omission regarding Defendant Instadose's inadequate due diligence, the record establishes that this omission was material. "[A] fact stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Longman*, 197 F.3d at 683. Given the steep drop in stock price that occurred once the SEC announced that it had concerns about "the operations of Instadose[]'s Canadian

affiliate" (ECF No. 1 ¶ 7) and the positive representations that Instadose had made regarding the operations of Instadose Canada (*id.* ¶ 39), it is clear that investors would have considered this omitted fact important and would have viewed the "total mix of information" to be "significantly altered" if the fact were disclosed.

The plaintiffs argue that they have established a presumption of reliance pursuant to *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). The Supreme Court in *Affiliated Ute* held that in a case "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54. Here, for the reasons stated above with respect to materiality, this standard is met, and a presumption pursuant to *Affiliated Ute* applies.

The plaintiffs have also established proximate cause. "[T]o show loss causation, a securities-fraud plaintiff must demonstrate that the defendant's misrepresentation was a substantial cause of the loss by showing a direct or proximate relationship between the loss and the misrepresentation." *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005) (quotation marks omitted). The plaintiffs argue that loss causation is established because "the price of Instadose shares declined almost 92% after the truth was revealed to the market through the SEC's Order of Suspension of Trading." ECF No. 33 at 32. The Court agrees that the SEC's order in November 2021 revealed that Defendant Instadose's due diligence regarding Instadose Canada was inadequate. Therefore, the plaintiffs have established proximate cause.

The only factor remaining is scienter. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (quotation marks omitted). In arguing the scienter requirement in the context of their motion for default judgment, the plaintiffs rely exclusively on two facts: (1) Defendant Wilshire's knowledge of Instadose Canada's internal affairs prior to his joining Defendant Instadose, and (2) the OSC charges against the CEO of Instadose Canada. ECF No. 33 at 29.

Based on the facts pleaded in the complaint, the earliest point at which the defendants had the requisite scienter regarding the omission of inadequate due diligence was after the Ontario Securities Commission announced fraud charges against the CEO of Instadose Canada on July 9, 2021. This clearly put the defendants on notice that Defendant Instadose's due diligence into the transaction with Instadose Canada was inadequate.[3] The fact that the defendants failed to disclose this fact (or even the existence of the OSC charges themselves) in any subsequent

---

[3] The complaint indicates that the OSC charges were "announced" on July 9, 2021, which strongly suggests that they were made public on that date. This is further supported by the OSC's website, which shows that an article regarding the charges was posted that same day. *See* https://www.osc.ca/en/news-events/news/osc-charges-grant-sanders-securities-act-offences (last visited August 24, 2023); *see also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that courts "may properly take judicial notice of matters of public record" when ruling on Rule 12(b)(6) motions); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (taking judicial notice of "publicly available" statistics "on an official government website "in reviewing the dismissal of [a] complaint under Rule 12(b)(6)"); *Gonzales v. D & P Pro. Servs., Inc.*, No. 1:13cv902, 2014 WL 1285895, at *3 (E.D. Va. Mar. 31, 2014) (finding "it is appropriate to evaluate plaintiff's claim against the standards of Fed. R. Civ. P. 12(b)(6)" when ruling on a motion for default judgment).

regulatory filing and instead continued to tout the transaction with Instadose Canada strongly supports an inference of "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319.

The facts pleaded in the complaint regarding Defendant Wilshire's knowledge are insufficient to establish scienter. Although the complaint pleads that Defendant Wilshire was an "award-winning risk and fraud mitigation manager" at "Instadose Pharm Corp."—which the complaint says "most likely" refers to Instadose Canada (ECF No. 1 ¶ 21)—the complaint does not plead any facts or even bare allegations that Defendant Wilshire knew about any fraud, insider trading, or other nefarious activity at Instadose Canada that adequate due diligence could have revealed. Thus, Defendant Wilshire's knowledge of Instadose Canada's inner workings cannot establish scienter.[4]

Given that the defendants could not have had the requisite scienter until after the July 9, 2021 OSC announcement, the first actionable omission alleged by the plaintiffs is the next-in-time SEC filing that referenced the transaction: Defendant Instadose's July 14, 2021 Form 10-Q filing. ECF No. 1 ¶ 34. This disclosure referenced the transaction with Instadose Canada and indicated an intent to close that

---

[4] Given that the question of scienter is determinative of the class period start date in this case, it is not necessary for the Court to consider whether there might be separately actionable omissions with respect to Defendant Wilshire that are actionable at an earlier date. On the facts as alleged, it is clear that Defendants Wilshire and Instadose effectively have the same knowledge given Wilshire's role "as Instadose's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of the Company . . ." and Defendant Instadose's status as a shell company. ECF No. 1 ¶ 16. As a result, the scienter inquiry with respect to both defendants is the same.

transaction on July 31, 2021, but did not disclose the OSC charges or the failure of Defendant Instadose to detect the underlying fraud in its due diligence. *Id.*

The complaint does not plead sufficient facts to support the second proffered omission, inadequate internal controls.[5] Although the SEC announcement in November 2021 indicated that there may be insider trading occurring, the SEC announcement does not indicate when that trading began or who was involved, other than that it "may be associated with individuals related to a control person." ECF No. 1 ¶ 48. Counsel for the plaintiffs argued at the hearing that this internal trading began in or around September 2021, when the price of the stock began to steeply rise without adequate support in Defendant Instadose's finances (ECF No. 41 at 16:3–18:19), but that allegation is not contained in the complaint, and there are no pleaded facts that support that allegation. Without those facts, the Court cannot identify when the alleged omission might have occurred. Therefore, the Court finds that the alleged omission regarding inadequate internal controls is not actionable.

In sum, Defendant Instadose's failure to disclose that its due diligence was inadequate in light of the OSC charges in its July 14, 2021 filing with the SEC constitutes an actionable omission. Because this filing constitutes the beginning of a "continuous stream of false [or misleading] information" disseminated by the defendants—by virtue of Defendant Instadose's subsequent filings with the SEC that

---

[5] Because the third omission regarding heightened regulatory scrutiny "flows" from the other two, the earliest possible point that it could constitute an actionable omission is the same as the date of the inadequate due diligence omission: July 14, 2021. Therefore, the Court declines to analyze this third alleged omission further for the purpose of determining the class period.

similarly omitted this information—the Court finds that the appropriate class period start date is July 14, 2021. *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 81 (D. Md. 1991). The plaintiffs' proposed class period end date, November 24, 2021, is appropriate because it is the date that Defendant Instadose disclosed the SEC's order to stop trading, which constituted a corrective disclosure because it revealed the inadequacy of Defendant Instadose's due diligence.

### ii.   Rule 23(a)(1): Numerosity

With respect to numerosity, the plaintiffs argue that "Instadose is a publicly traded company that had 75,000,000 shares of common stock issued and outstanding as of February 25, 2021." ECF No. 33 at 18 (citing ECF No. 32-3 at 3).[6] In addition, the plaintiffs assert that "the number of shares traded during the Class Period was 540,256." *Id.* at 18–19 (citing data from the OTC Markets Group). Of course, this number is based on the plaintiff's proposed class period, not the modified class period determined by the Court—presumably, some of these trades occurred outside of the revised window.

Nonetheless, it appears that the vast majority of the trading of Defendant Instadose's stock occurred within the revised class period. This is supported by the loss affidavits various plaintiffs submitted in support of their motions to be appointed lead plaintiff, which show that the plaintiffs purchased Instadose securities

---

[6] "[A] court may . . . consider material outside the pleadings in determining the appropriateness of class certification." *In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 106 (D. Conn. 2005); *see also, e.g., Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 284 (S.D.N.Y. 2019).

exclusively in October and November 2021.[7] *See* ECF Nos. 10-3, 13-3, 16-1, 17-4. Further, publicly available trading data also indicates that transaction volumes increased substantially and peaked in and around September through November 2021.[8]

Because "[t]he numerosity requirement is seldom disputed in securities fraud cases given the large quantity of shareholders who purchase stock in reliance upon a company's public statements," *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009), the Court finds that the numerosity requirement is satisfied on this showing. *BearingPoint*, 232 F.R.D. at 538 (numerosity requirement satisfied where "more than 194 million shares of common stock outstanding" meant that there were "hundreds, if not thousands, of potential class members").

### iii.      *Rule 23(a)(2) and (3): Commonality and Typicality*

"The Rule 23(a) requirements of commonality and typicality tend to merge analytically." *Mills Corp.*, 257 F.R.D. at 105. Commonality looks to whether "there are questions of law or fact common to the class," while typicality looks to whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *BearingPoint*, 232 F.R.D. at 538.

"Members of a proposed class in a securities case are especially likely to share common claims and defenses." *BearingPoint*, 232 F.R.D. at 539. As in *BearingPoint*, "various of defendants' acts and omissions are at the center of this case." *Id.* at 539.

---

[7] *See supra* note 6.
[8] *See, e.g.*, Nasdaq, *Instadose Pharma Corp Com*, https://www.nasdaq.com/market-activity/stocks/insd (last visited August 24, 2023); *see supra* note 6.

With respect to typicality, the lead plaintiffs, Mavis Brown and Tim Brown, state that they purchased all of their shares in Instadose between October and November 2021. *See* ECF No. 17-4. Therefore, they are entirely unaffected by the shortened class period and continue to share claims and defenses with the other class members. The only remaining facts that might differentiate the members of the class from each other relate to damages. But these minor differences do not destroy the common questions of law and fact inherent in the class members' shared claims. *See Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 29 (E.D.N.Y. 2016) (finding that commonality was not destroyed where there were differences "relevant to the amount of damages owed").

For the reasons stated above, the Court finds that the commonality and typicality requirements are satisfied.

### iv.        *Rule 23(a)(4): Adequacy*

The final requirement, adequacy, looks to whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, "the class representative and his counsel must: (1) possess the qualifications and ability to litigate the case; and (2) be free of any interests antagonistic to those of the class." *BearingPoint*, 232 F.R.D. at 541. Judge Young previously found that the lead plaintiffs in this case and their counsel satisfy the adequacy requirement. ECF No. 25 at 6–8. The Court agrees with Judge Young's conclusion and incorporates his analysis by reference.

For these reasons, the Court finds that the adequacy requirement is satisfied.

### v.      *Rule 23(b)(3): Type of Class*

A class may be certified under Rule 23(b)(1), (2), or (3). *See* Fed. R. Civ. P. 23(b).

Here, the plaintiffs argue that the class should be certified under Rule 23(b)(3), which

requires the following:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3), ECF No. 33 at 16. The purpose of the Rule 23(b)(3) inquiry is

to ensure that a class action is the appropriate mechanism to achieve "economies of

time, effort, and expense" and "uniformity of decision as to persons similarly situated

. . . without sacrificing procedural fairness or bringing about other undesirable

results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Adv.

Comm. Notes, 28 U.S.C. App., p. 697). "Securities fraud cases are particularly

appropriate candidates for treatment under Rule 23(b)(3) since the elements of the

cause of action generally relate to the acts or omissions of the defendants and because

individual damages might be too paltry to justify bringing individual cases."

*BearingPoint*, 232 F.R.D. at 542.

Here, it is clear that the "questions of law and fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). All members share the same causes of action, and those causes of action hinge entirely on the acts or omissions of the defendants. The only factual differences between members of the class that may arise relate to damages, but "differences in damages among the potential class members do not generally defeat predominance if liability is common to the class." *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 299 (E.D. Va. 2004).

It is also clear that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015) (quotation marks omitted). Given the number of potential class members and the "scattering of suits" that could result, a single class action in a single venue is the superior method for fairly adjudicating this controversy.

For the foregoing reasons, the Court finds that the requirements of Rule 23(b)(3) are satisfied.

## B.     Appointment of Class Counsel

The plaintiffs also seek the appointment of Bragar Eagel & Squire, P.C. ("the firm") as class counsel. ECF No. 33 at 18. The appointment of class counsel is governed by Rule 23(g), which states in part that the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Judge Young previously found that the firm has "extensive experience in securities litigation" and has achieved "substantial recoveries in prior actions." ECF No. 25 at 10. The plaintiffs assert here that the firm "is currently acting as lead counsel in several federal securities actions and has achieved many multi-million-dollar recoveries for investors." ECF No. 33 at 18–19. The firm appears to have sufficiently "identif[ied] or investigat[ed] potential claims in the action" and appears to have the resources necessary to represent the class.

For the foregoing reasons, the Court finds that appointment of the firm as class counsel is appropriate.

### C.    Default Judgment

Having found that the class should be certified with a modified class period, the Court must now decide whether to grant default judgment against the defendants. Rule 23(c)(3)(B) provides that, "for any class certified under Rule 23(b)(3)"—e.g., this one—the judgment must "include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3)(B). Rule 23(c)(2), in turn, provides that a notice for a class certified under Rule 23(b)(3) must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Courts have broadly held that default judgment cannot be entered in a class action until a Rule 23(c)(2) notice is issued. S*ee, e.g.*, *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) ("The language of Rule 23(c)(2) supports the view that notice must be sent *before* a judgment has been granted.") (emphasis in original); *Heinz v.*

*Dubell Lumber Co.*, No. 19cv8778, 2020 WL 6938351, at *8 (D.N.J. Nov. 25, 2020) (certifying class but denying default judgment because "Plaintiff has not sent notice to the proposed class members, and therefore by entering a default judgment, this Court would be binding persons whose rights are at issue without first giving them proper notice"); *Yang v. Assisted Credit Servs., Inc.*, No. 15cv2118, 2017 WL 9939690, at *1 (C.D. Cal. Jan. 10, 2017) (noting that the court had previously granted a motion for class certification and "continued the motion for default judgment . . . so that Plaintiff could provide notice to class members.").

Earlier in this litigation, four plaintiffs (or groups of plaintiffs) and their counsel filed motions seeking to be appointed lead plaintiff and counsel for lead plaintiff. *See* ECF Nos. 7, 11, 14, 17. The plaintiffs included with their motions a public notice that had been issued pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i). *See, e.g.*, ECF Nos. 10-1. Although this notice appears to satisfy the requirements of § 78u-4(a)(3)(A)(i) for the purposes of identifying a lead plaintiff, it does not satisfy the requirements of Rule 23(c)(2)(B); *see also* 15 U.S.C. § 78u-4(a)(3)(A)(iii) (noting that "[n]otice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure."). In particular, it does not comply with at least parts (v), (vi), and (vii) of the Rule.

For the foregoing reasons, the Court will deny the motion for default judgment without prejudice and will order the plaintiffs to submit a proposed notice plan for the Court's approval. The plan should include proposed methods for providing notice, proposed notice language, and a proposal for allocating the costs of providing notice.

21

If the plaintiffs believe that any third-party discovery could practically identify class members "through reasonable effort," such that individual notice can be achieved, the plaintiffs shall file a motion seeking to open discovery for that limited purpose. *See, e.g.*, *Yarger v. Fresh Farms, LLC*, No. 2:19cv2767, 2020 WL 4673229, at *9 (D. Kan. Aug. 12, 2020) (granting leave to conduct discovery to locate class members prior to entering default judgment).

## IV.    CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Class Certification and for Default Judgment (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART.**

With respect to class certification, the motion is **GRANTED.** The class period shall run from July 14, 2021, through November 24, 2021, both dates inclusive, and default judgment class shall be:

> All persons and entities that purchased or otherwise acquired publicly traded Instadose securities from July 14, 2021, through November 24, 2021, both dates inclusive.

Excluded from the certified class are (a) the defendants; (b) members of the immediate families of the defendants; (c) all subsidiaries and affiliates of the defendants, including the company's employee retirement and benefit plan(s); (d) any person who is or was an officer or director of the company during the class period; (e) any entity in which any defendant has a controlling interest; (f) the defendants' directors' and officers' liability insurance carriers and any affiliates or subsidiaries

thereof; and (g) the legal representatives, heirs, successors, or assigns of any such excluded party.[9]

With respect to default judgment, the motion is **DENIED.** The plaintiffs may file a renewed motion for default judgment after the conclusion of the class notice period.[10]

The plaintiffs are **ORDERED** to file a proposed class notice pursuant to Fed. R. Civ. P. 23(c)(2) within 14 days of the date of this Memorandum Opinion and Order.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
August 24, 2023

---

[9] This proposed list of excluded parties the plaintiffs provided is fairly typical. *See, e.g.*, *Contant v. Bank of Am. Corp.*, No. 13-cv-7789, 2020 WL 13689631, at *4 (S.D.N.Y. Nov. 19, 2020) (excluding "[d]efendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 612 (N.D. Cal. 2010) (similar).

[10] The renewed motion for default judgment should include an amended damages calculation that addresses the reduction in the class period and the Court's comments at the August 2 hearing related to the Declaration of Daniel S. Bettencourt, MBA.

23