**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Norfolk Division)**

| | |
|---|---|
| MICHELE DELUCA, Individually and on Behalf of All Others Similarly Situated, | Case No: 2:21-cv-000675 (JKW) (RJK) |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| INSTADOSE PHARMA CORP. f/k/a MIKROCOZE, INC. and TERRY WILSHIRE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT</u>**

## TABLE OF CONTENTS

FACTUAL BACKGROUND.................................................................................................1

PROCEDURAL HISTORY ..............................................................................................4

ARGUMENT ....................................................................................................................7

I.    This Court Has Jurisdiction.......................................................................................7

      A.    This Court Has Subject Matter Jurisdiction Over This Action ...........................7

      B.    This Court Has Personal Jurisdiction Over Defendants.....................................7

II.    The Court Should Enter Default Judgment.................................................................9

      A.    Plaintiffs Have Stated A Claim Upon Which Relief Can Be Granted and Default as to Liability Should be Entered ........................................................10

      B.    Plaintiffs and the Class Are Substantially Prejudiced By the Delay .................11

      C.    The Default Is Willful.........................................................................................11

      D.    Defendants Have Not Asserted Any Meritorious Defenses ...............................13

III.    The Class Is Entitled to $4,383,673 in Damages and Notice Costs .............................14

      A.    Class Damages Are $4,376,673........................................................................14

CONCLUSION................................................................................................................17

## TABLE OF AUTHORITIES

CASES

*Aero Norfolk, LLC v. Phila. Truck Lines, Inc.*,
　C.A. No. 2:21cv101 (RCY), 2022 U.S. Dist. LEXIS 50504 (E.D. Va. Mar. 21, 2022) ...........14

*Black v. Lane*,
　22 F.3d 1395 (7th Cir. 1994) .................................................................................................10

*Bone v. Dick's Sporting Goods, Inc.*,
　C.A. No. 3:20-cv-02856-JMC, 2022 U.S. Dist. LEXIS 25921 (D.S.C. Feb. 14, 2022) .............9

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*,
　06 Civ. 14226 (RLC), 2008 U.S. Dist. LEXIS 107062 (S.D.N.Y. Oct. 27, 2008)..................11

*Bruno v. Eckehart Corp.*,
　No. SACV 11-0173-DOC(Ex), 2012 U.S. Dist. LEXIS 196469 (C.D. Cal., Jul. 16, 2012).....16

*Burton v. TJX Cos.*,
　No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839 (E.D. Va. May 1, 2008)............................11

*In re Cendant Corp. Sec. Litig.*,
　109 F. Supp. 2d 235 (D.N.J. 2000) .......................................................................................14

*Choice Hotels Int'l v. Bonham*,
　No. 96-2717, 1997 U.S. App. LEXIS 26909 (4th Cir. Sept. 30, 1997) ....................................8

*Dundee Cement Co. v. Howard Pipe & Concrete Prods.*,
　722 F.2d 1319 (7th Cir. 1983) ...........................................................................................9, 10

*Educ. Credit Mgmt. Corp. v. Optimum Welding*,
　285 F.R.D. 371 (D. Md. 2012)................................................................................................9

*ESAB Grp., Inc. v. Centricut, Inc.*,
　126 F.3d 617 (4th Cir. 1997) ..................................................................................................8

*Fitzsimmons v. Barton*,
　589 F.2d 330 (7th Cir. 1979) ..................................................................................................7

*Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*,
　908 F. Supp. 2d 763 (W.D. Va. 2012) .....................................................................................9

*GlobalSantaFe Corp. v. Globalsantafe.com*,
　250 F. Supp. 2d 610 (E.D. Va. 2003)....................................................................................10

*Gonzalez v. Spunk Indus., Inc.*,
　C.A. No. ELH-18-2935, 2019 U.S. Dist. LEXIS 156489 (D. Md. Sept. 13, 2019) ................13

*HICA Educ. Loan Corp. v. Bolte*,
　No. 11 Civ. 6404 (LTS)(GWG), 2012 U.S. Dist. LEXIS 17288 (S.D.N.Y. Feb. 10, 2012).....13

*Hogue v. Milodon Eng'g, Inc.*,
　736 F.2d 989 (4th Cir. 1984) ..................................................................................................8

*Hunt v. Imperial Merchant Servs., Inc.*,
   560 F.3d 1137 (9th Cir. 2009) ..................................................................................16

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ......................................................................................7

*Mullinex v. John Crane Inc.*,
   C.A. No. 4:18-cv-33, 2022 U.S. Dist. LEXIS 193481 (E.D. Va. Oct. 24, 2022)....................13

*Oppenheimer Fund v. Sanders*,
   437 U.S. 340 (1978) ................................................................................................16

*People's United Equip. Fin. Corp. v. Wright*,
   C.A. No. 1:11cv0249 (LMB/JFA), 2011 U.S. Dist. LEXIS 73107 (E.D. Va. June 9, 2011)....10

*Progressive Advanced Ins. Co. v. Holt*,
   C.A. No. 2:22cv321, 2023 U.S. Dist. LEXIS 27625 (E.D. Va. Feb. 17, 2023) ......................13

*Ramos-Falcon v. Autoridad de Energia Electrica*,
   301 F.3d 1 (1st Cir. 2002) ......................................................................................10

*SEC v. Miller*,
   C.A. No. TDC-19-2810, 2020 U.S. Dist. LEXIS 101646 (D. Md. June 10, 2020)............7, 8, 9

*Sec. Inv'r Prot. Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ..................................................................................7

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ....................................................................................8

*United Liberty Life Ins. Co. v. Ryan*,
   985 F.2d 1320 (6th Cir. 1993) ..................................................................................7

*United States v. Moradi*,
   673 F.2d 725 (4th Cir. 1982) ....................................................................................9

*Vick v. Wong*,
   263 F.R.D. 325 (E.D. Va. 2009) ..............................................................................11

*Williams v. Advert. Sex, LLC*,
   410 F. App'x 578 (4th Cir. 2011) ............................................................................13

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   No. 2:18-md-2836-RBS-DEM, 2023 U.S. Dist. LEXIS 187657 (E.D. Va. Oct. 18, 2023)......14

## STATUTES

15 U.S.C.S. § 78a...........................................................................................................7

15 U.S.C.S. § 78aa.........................................................................................................7

15 U.S.C.S. § 78j(b).......................................................................................................7

15 U.S.C.S. § 78t(a).......................................................................................................7

RULES

17 C.F.R. § 240.10b-5 ........................................................................................................7

Fed. R. Civ. P. 55(b)(2)(B)-(C) .......................................................................................14

Fed. R. Civ. P. 8(b)(6) ................................................................................................10, 13

Fed. R. Evid. 702 .............................................................................................................14

Nev. R. Civ. P. 4.2(c)(1)(A)(i) ...........................................................................................8

CODES

VA. CODE ANN. § 8.01-299(1) (2022) ...............................................................................8

OTHER AUTHORITIES

3 Newberg on Class Actions § 8:6 (4th ed.) ....................................................................16

5-23 Class Actions in Federal Courts § 23.106 ...............................................................16

Pursuant to Federal Rule of Civil Procedure ("Rule") Rule 55(b), and in accordance with the Court's August 24, 2023 Memorandum Opinion & Order (ECF No. 43, the "Order"), Lead Plaintiffs and Class Representatives Mavis Brown and Tim Brown (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Renewed Motion for Default Judgment against Instadose Pharma Corp. f/k/a Mikrocoze, Inc. ("Instadose" or the "Company") and Terry Wilshire ("Wilshire," and together "Defendants").[1]

## **FACTUAL BACKGROUND**

Instadose is a Nevada corporation.  ¶ 15.[2]  During the Class Period,[3] Instadose's principal executive offices were located at 1545 Crossways Boulevard, Suite 250, Chesapeake, Virginia 23320-0210.  *Id*.  Instadose securities traded in an efficient market on the OTC markets under the trading symbol "INSD" during the Class Period.  *Id*.

Instadose does not have significant operations and was at all relevant times classified as a "shell" company.  ¶¶ 2, 19.  Instadose was formerly known as Mikrocoze, Inc. ("Mikrocoze"), which was organized to sell micro-furniture for small spaces via the internet.  *Id*.  The Company has since pivoted its business to focus on growth and acquisition of pharmaceutical grade agricultural products.  ¶¶ 2, 23.

On November 6, 2020, the Company, then still known as Mikrocoze, reported that on October 9, 2020, Sukhmanjit Singh ("Singh"), the Company's Chief Executive Officer ("CEO"),

---

[1]  According to information filed with the U.S. Securities and Exchange Commission ("SEC"), Instadose changed its name to IDP Holdings (USA) Corp. in July of 2023.

[2]  Citations to "¶ __" are to paragraphs in the Class Action Complaint filed in the above-captioned action (the "Action") on December 30, 2021 (the "Complaint").  ECF No. 1.  The facts set forth in the Complaint are incorporated herein by reference.  Capitalized terms not otherwise defined herein shall have the same meaning as in the Complaint.

[3]  Pursuant to the Court's Order,  the certified "Class Period" runs from July 14, 2021 through November 24, 2021, both dates inclusive.

Chief Financial Officer, President, Treasurer, Secretary, and a Director of the Company, had resigned effective immediately.   ¶ 20.   Following Singh's resignation, the Company became heavily involved with Instadose Pharma Corp., a Canadian-based cannabis producer ("Instadose Canada").[4]   *Id.*   Indeed, in the same disclosure regarding Singh's resignation, the Company reported that defendant Wilshire, a purported award-winning risk and fraud mitigation manager "currently responsible for Global Risk assessment and Corporate Social Responsibility at Instadose Pharm Corp."—*i.e.*, most likely, Instadose Canada—had consented to act as the new President and a director of the Company.   ¶ 21.

On December 7, 2020, Instadose (then still Mikrocoze) entered into a non-binding letter of intent with Instadose Canada and holders of a majority of its outstanding shares for a transaction to acquire 100% of the outstanding common shares of Instadose Canada in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange (the "Business Combination").   ¶¶ 3, 22, 24.

On March 11, 2021, Mikrocoze changed its name to Instadose Pharma Corp. and its trading symbol to INSD, while pivoting its business to focus on growth and acquisition of pharmaceutical grade agricultural products—*i.e.*, Instadose Canada's focus.   ¶ 23.

On July 9, 2021, the Ontario Securities Commission ("OSC") announced that the Chairman and CEO of Instadose Canada, Grant Ferdinand Sanders ("Sanders"), was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors.   ¶¶ 5, 33.   The

---

[4]  According to a Form 8-K filed with the SEC on September 19, 2023, as of that date, Instadose closed on the sale of Instadose Canada to TetraPharma Royalty Corp. ("TetraPharma"), a Nevada corporation, and both the Company and Instadose Canada became wholly owned subsidiaries of TetraPharma.  Instadose and TetraPharma have the same address and directors and officers.

OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business. *Id.* These facts were omitted from the Company's July 14, 2021 Form 10-Q, September 22, 2021 Form 8-K which provided an update on the Business Combination, and October 13, 2021 Form 10-Q. ¶¶ 34, 38, 40.

On October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remained subject to customary closing conditions, including approval by a Canadian court. ¶¶ 5, 45. Following completion of the Business Combination, Instadose expected that its board of directors would include Sanders. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times. ¶¶ 4, 47.

On November 24, 2021, in a filing with the SEC, Instadose disclosed that "[o]n November 23, 2021, the Company was notified by the SEC that it had ordered, pursuant to Section 12(k) of the [Exchange Act], that trading in the securities of [Instadose] is suspended for the period from 9:30 a.m. EDT on November 24, 2021, through 11:59 p.m. EDT on December 8, 2021." ¶¶ 7, 48. Instadose advised investors that the SEC's order specifically stated that "it appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of

[Instadose] securities . . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate." *Id.*

On this news, and after Instadose's common stock began publicly trading again on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021.  ¶¶ 8, 49.

## PROCEDURAL HISTORY

The Complaint was filed on December 30, 2021, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.  ECF No. 1.  On January 19, 2022, the original plaintiff in the action, Michele DeLuca ("DeLuca"), through a process server, effected service on Instadose by personally serving the summons and Complaint on Instadose's registered agent, State Agent and Transfer Syndicate, Inc. (the "Registered Agent"), at 112 North Curry Street, Carson City, Nevada 89703-4934. *See* ECF No. 27-1 (Declaration of Marion C. Passmore in Support of Request for Entry of Default) at ¶ 3; *see also* ECF No. 4 (Affidavit of Service for Instadose).  On the same day, DeLuca effected service on Wilshire, through a process server, by personally serving the summons and Complaint on Instadose's Registered Agent at the same address.  ECF No. 27-1 at ¶ 4; *see also* ECF No. 5 (Affidavit of Service for Wilshire).  The deadline for Defendants to answer or otherwise respond to the Complaint was February 9, 2022.  ECF No. 27-1 at ¶ 5.  Defendants did not respond on that date.

On February 28, 2022, DeLuca submitted a status report to the Court stating that because the action is a federal securities class action alleging violations under the Exchange Act, the Private

Securities Litigation Reform Act of 1995 (the "PSLRA") governs certain procedural aspects of the action, including the process for appointment of a lead plaintiff in the action. *See* ECF No. 6; *see also* ECF No. 27-1 at ¶ 6. DeLuca informed the Court that due to the PSLRA's procedural requirements, counsel for DeLuca believed that an answer or motion responding to the Complaint would be premature prior to the Court's entry of an order appointing a lead plaintiff as typically, Court-appointed lead plaintiff(s) file their own amended complaint. *Id.* DeLuca also informed the Court that service was effected as stated herein with affidavits of service filed on the docket and that counsel for DeLuca had contacted Kris Osborne (authorized to accept service on behalf of the Registered Agent) by telephone and confirmed that the summonses and Complaint were forwarded to Defendants. *Id.* As of the date of the status report, DeLuca had not heard from or otherwise been contacted by counsel for Defendants, and Defendants had not yet made an appearance in the Action. *Id.*

On July 29, 2022, the Court appointed Plaintiffs as Lead Plaintiff in the Action, and appointed Bragar Eagel & Squire, P.C. ("Bragar Eagel") and Levi & Korsinsky, LLP ("LK") as lead counsel and local counsel, respectively. ECF No. 26.

A month after the order appointing Lead Plaintiff, Defendants had still not made an appearance in the Action, or otherwise defended the litigation in a timely manner. Accordingly, on August 24, 2022, Plaintiffs filed a Request for Entry of Default pursuant to Rule 55(a). ECF No. 27. The next day, on August 25, 2022, the Clerk of the Court made an ENTRY OF DEFAULT as to Instadose and Wilshire pursuant to Rule 55(a), for failure to file an answer in this Action. ECF No. 28.

On September 2, 2022, the plaintiffs in a related derivative action (Case No. 2:22-cv-66) filed a Notice of Related Cases and Motion to Coordinate Scheduling, Discovery and Pretrial

Proceedings.  ECF No. 29.  Plaintiffs filed a Response and Objection to that motion on September 6, 2022, noting that coordination of scheduling, discovery, and pretrial proceedings of the two cases is not appropriate given that the two proceedings raise different legal claims, on behalf of different, and in part, adverse parties, and often in these circumstances, the derivative case is stayed until the outcome of the securities class action.  ECF No. 30.

On January 18, 2023, the Court entered an order denying the derivative plaintiffs' motion for coordination and directing Plaintiffs to file a motion for default judgment pursuant to Rule 55(b) with a supporting memorandum.  ECF No. 31.

Plaintiffs filed a motion for class certification and default judgment on February 28, 2023. ECF No. 32.  On June 9, 2023, the Court ordered Plaintiffs to file a supplemental brief addressing certain aspects of the alleged fraud and proposed class period (ECF No. 35), and Plaintiffs filed a supplemental brief on June 22, 2023 (ECF No. 36).  A hearing on Plaintiffs' motion was held on August 2, 2023.  ECF Nos. 40-41.

On August 24, 2023, the Court issued the Order granting class certification with the shortened Class Period and ordering that Class notice be completed prior to entry of default judgment.  ECF No. 43.  The Court denied the default judgment motion, stating that Plaintiffs could file a renewed motion for default judgment after the conclusion of the class notice period. *Id.*

Plaintiffs filed a motion for approval of form and manner of class notice on September 19, 2023 (ECF No. 46), which the Court granted with modifications on October 19, 2023 (ECF No. 47).  Counsel and the court-appointed notice administrator provided class notice in accordance with the Court's order and provided proof of such on February 29, 2024.  ECF No. 48.

# ARGUMENT[5]

## I.    This Court Has Jurisdiction

### A.    This Court Has Subject Matter Jurisdiction Over This Action

The claims asserted in this Action arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.S. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Accordingly, this Court has jurisdiction over the subject matter of this Action pursuant to Section 27 of the Exchange Act, which gives the United States district courts "exclusive jurisdiction of violations of this title [15 U.S.C.S. §§ 78a, *et seq.*] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title [15 U.S.C.S. §§ 78a, *et seq.*] or the rules and regulations thereunder." 15 U.S.C.S. § 78aa.

### B.    This Court Has Personal Jurisdiction Over Defendants

The Second, Sixth, Seventh, and Ninth Circuits have all held "that the nationwide service provision in Section 27 [of the Exchange Act] confers personal jurisdiction over parties served anywhere in the United States."  *SEC v. Miller*, C.A. No. TDC-19-2810, 2020 U.S. Dist. LEXIS 101646, at *8 (D. Md. June 10, 2020).[6]  While not directly addressing the question under Section

---

[5]  Unless otherwise noted, all internal quotations and citations are omitted and emphasis has been added.

[6]  *See, e.g.*, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) ("Section 27 confers personal jurisdiction over a defendant who is served anywhere within the United States."); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) ("We . . . conclude that section 27 confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States."); *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) ("Where a federal statute such as Section 27 of the Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."); *Fitzsimmons v. Barton*, 589 F.2d 330, 332-33 (7th Cir. 1979) (finding that based on "this Congressional authorization of nationwide service of process" and Rule 4, Section 27 provides personal jurisdiction upon service without application of the traditional minimum contacts test).

27, "in analogous contexts[,] . . . the Fourth Circuit has held that when federal law authorizes nationwide service of process, personal jurisdiction exists in any federal district without regard to whether the defendant has 'minimum contacts' with the forum state." *Miller*, 2020 U.S. Dist. LEXIS 101646, at \*9. *See also ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626, 628 (4th Cir. 1997) (personal jurisdiction was established where defendants had been validly served pursuant to the RICO nationwide service provision); *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984) (finding personal jurisdiction based on the service provision of Bankruptcy Rule 704 and holding that "[w]here Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant").

"The Fourth Circuit has specified that where there is nationwide service of process by statute, the due process requirement arises under the Fifth Amendment, not the Fourteenth Amendment," so "'minimum contacts' with the forum state, 'is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision.'" *Miller*, 2020 U.S. Dist. LEXIS 101646, at \*10-11 (citing *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443, 444 (4th Cir. 2015)). Accordingly, because Defendants were properly served via their registered agent in Nevada (*see* ECF Nos. 4-6),[7] this Court has personal jurisdiction. *See Miller*, 2020 U.S. Dist. LEXIS 101646, at \*8, \*11

---

[7] *See Choice Hotels Int'l v. Bonham*, No. 96-2717, 1997 U.S. App. LEXIS 26909, at \*4 (4th Cir. Sept. 30, 1997) ("Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction.") (citations omitted). Service here comports with the requirements of Rules 4(h), 4(e)(1), and 4(e)(2)(C) because a private process server personally served a copy of the summons and Complaint on Instadose's Registered Agent, who was also authorized to accept service on behalf of Wilshire. *See* VA. CODE ANN. § 8.01-299(1) (2022); Nev. R. Civ. P. 4.2(c)(1)(A)(i). *See*

("the Court finds that the nationwide service language in the jurisdictional provisions in Section 22 of the Securities Act and Section 27 of the Exchange Act, combined with Rule 4(k)(1)(C), likewise establishes personal jurisdiction against Miller for claims under these statutes without regard to the existence of minimum contacts with Maryland, where, as here, he was served in the United States"); *Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 768 n.5 (W.D. Va. 2012).

## II.    <u>The Court Should Enter Default Judgment</u>

"Where[, as here,] a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2)." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although the "Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,' [] default judgment may be appropriate where a party is unresponsive." *Id.* at 373; *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be *liberally exercised*, in entering such [default] judgments . . . ."). Here, the clerk has entered defaults under Rule 55(a) as to Instadose and Wilshire. ECF No. 28. Plaintiffs are now seeking a default judgment from the Court under Rule 55(b).

Once a default has been entered, "the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Optimum Welding*, 285 F.R.D. at 373. Thus, the default itself establishes the defendant's liability. *See Dundee Cement Co. v. Howard*

---

*also Bone v. Dick's Sporting Goods, Inc.*, C.A. No. 3:20-cv-02856-JMC, 2022 U.S. Dist. LEXIS 25921, at *7-8 (D.S.C. Feb. 14, 2022).

*Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).[8] "A defendant in default admits the factual allegations in the Complaint." *People's United Equip. Fin. Corp. v. Wright*, C.A. No. 1:11cv0249 (LMB/JFA), 2011 U.S. Dist. LEXIS 73107, at *9-10 (E.D. Va. June 9, 2011) (citing Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied.")); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the Complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.").

A.    **Plaintiffs Have Stated A Claim Upon Which Relief Can Be Granted and Default as to Liability Should be Entered**

"To prevail under § 10(b) of the Securities Exchange Act and Rule 10b-5, a plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *BearingPoint*, 232 F.R.D. at 539. Plaintiffs can offer generalized proof to show that Defendants made a variety of misleading statements. Plaintiffs can also use generalized proof to demonstrate Defendants' state of mind, and damages. The Complaint adequately and specifically alleges how each of the Defendants violated Sections 10(b) and 20(a) of the Exchange Act. The Court informed Plaintiffs on their initial motion that it would be addressing merits (ECF No. 37) and the Court's Order addressed the actionability of the Complaint's alleged misstatements and omissions, Defendants' scienter, and loss causation, determining that such only existed for the statements alleged to be false and

---

[8] It is improper for the court to consider liability issues involving a defaulted defendant if it does not first give the plaintiff notice that the merits of the case will be addressed. *Black v. Lane*, 22 F.3d 1395, 1398 (7th Cir. 1994); *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 3 (1st Cir. 2002).

misleading beginning on July 14, 2021.  ECF No. 43.  Nothing has occurred since to change the Court's Order.

### B.    Plaintiffs and the Class Are Substantially Prejudiced By the Delay

"To determine if the non-defaulting party was prejudiced, courts examine whether the delay [caused by the default]: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (alteration original).

Despite proper service, their knowledge of, and public acknowledgment of this Action, Defendants have simply never appeared in this case.  It was filed over two years ago, and Plaintiffs and the Class have received no recompense for their losses incurred when Instadose's share price was decimated by the SEC's temporary suspension of trading due to Defendants' lack of transparency into the Business Combination.  Absent default judgment, "there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226 (RLC), 2008 U.S. Dist. LEXIS 107062 (S.D.N.Y. Oct. 27, 2008).

### C.    The Default Is Willful

"[S]ome district courts within the Fourth Circuit consider the 'personal responsibility' factor the most important" in deciding the question of a default judgment.  *Burton v. TJX Cos.*, No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, at *6 (E.D. Va. May 1, 2008).  Here, there is no question that the default is willful.  Service was effectuated on Defendants' Registered Agent, and then counsel for DeLuca contacted Kris Osborne, who was authorized to accept service on behalf of Defendants' Registered Agent, by telephone and confirmed that the summonses and Complaint were forwarded to Defendants.  Moreover, the Company has recognized the existence of the Action

in multiple public filings with the SEC.  A Form 8-K filed with the SEC on January 7, 2022 states,

in relevant part:

> On December 30, 2021, Michael Deluca, individual and on behalf of all others similarly situated filed a class action complaint in the United States District Court, Eastern District of Virginia Case #2:21-cv-00675 against the Registrant and Terry Wilshire, its Chief Executive Officer.  The complaint alleges violations of Section 10(b) of the Exchange Act and 10(b)5 promulgated thereunder, violations of Section 20(a) of the Exchange Act against Wilshire.
>
> The plaintiff seeks judgment as follows:
>
> > (i) Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;
> > (ii) Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;
> > (iii) Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and
> > (iv) Awarding such other and further relief as the Court may deem just and proper.
>
> ***The Registrant has obtained counsel to dispute the charges against itself and Mr. Wilshire.***

ECF No. 32-4.  Additionally, a Form 10-K filed with the SEC on March 15, 2022 states, in relevant

part:

> On December 30, 2021, Michael Deluca, a purported stockholder of the Company, filed a putative class action complaint in the U.S. District Court, Eastern District of Virginia, naming as defendants the Company and former CEO, Terry Wilshire.  The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (and SEC Rule 10b-5 promulgated thereunder), as well as a control person claim under Section 20(a) of the Exchange Act against Wilshire.  The complaint alleges that defendants made materially false and misleading misrepresentations and omissions in SEC filings upon which plaintiff's purportedly relied in purchasing shares of the Company and that plaintiff's suffered harm when the price of the stock declined and the purported truth emerged.  Plaintiff seeks various forms of relief, including alleged damages, attorneys' fees and costs and other relief.  ***The Company intends to vigorously defend against this lawsuit, and at this time, the Company cannot predict the outcome or impact of the litigation.***

Ex. 32-5; *Gonzalez v. Spunk Indus., Inc.*,  No. ELH-18-2935, 2019 U.S. Dist. LEXIS 156489, at *6 n.2 (D. Md. Sept. 13, 2019) (quoting *Williams v. Advert. Sex, LLC*, 410 F. App'x 578, 579-80 (4th Cir. 2011)) ("We note that the Default Defendants are commercial enterprises . . . .  These relatively sophisticated litigants pursued a litigation strategy that carried the real possibility of having a default judgment entered against them.  Nonetheless, the Default Defendants failed to enter an appearance before the district court or this court at their own peril.").

Further, Class Counsel has mailed copies of document filings and Court orders to Defendants at various addresses, *see, e.g.*, ECF Nos. 27, 32, 46, with Defendants actively refusing acceptance of mailings by returning to sender in the last six months.

### D.    Defendants Have Not Asserted Any Meritorious Defenses

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Progressive Advanced Ins. Co. v. Holt*, C.A. No. 2:22cv321, 2023 U.S. Dist. LEXIS 27625, at *8 (E.D. Va. Feb. 17, 2023). Defendants' failure to answer the Complaint precludes them from raising any "meritorious defense" to the claims asserted against them and Plaintiffs' allegations are deemed to be admitted. *See* Fed. R. Civ. P. 8(b)(6); *see also Mullinex v. John Crane Inc.*, C.A. No. 4:18-cv-33, 2022 U.S. Dist. LEXIS 193481, at *10 (E.D. Va. Oct. 24, 2022) ("The principal thrust of the Federal Rules is to expedite trial of the issues on the merits and in order to do so defendants must assist in the formulation of the issues by answering plaintiffs' complaint or run the risk of default judgment."); *HICA Educ. Loan Corp. v. Bolte*, No. 11 Civ. 6404 (LTS)(GWG), 2012 U.S. Dist. LEXIS 17288, at *4 (S.D.N.Y. Feb. 10, 2012) ("[T]he Court is unable to determine whether Defendant has a

meritorious defense to Plaintiff's allegations because he has presented no such defense to the Court.").[9]

## III.    The Class Is Entitled to $4,383,673 in Damages and Notice Costs

A default judgment should be entered against Defendants in the amount of $4,383,673, comprised of $4,376,673 in Class-wide damages as a result of Defendants' fraudulent misstatements and omissions and $7,000 for Class notice costs.[10]

### A.    Class Damages Are $4,376,673

Expert opinion evidence is the proper method for establishing damages in cases involving securities fraud. *See generally*, Rule 702, *Federal Rules of Evidence*, which permits a witness to testify as an expert where the court determines that "specialized knowledge will assist trier of fact to understand evidence or to determine fact in issue." In addition, a district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations. Fed. R. Civ. P. 55(b)(2)(B)-(C).

Here, Plaintiffs' damages expert has calculated Class damages to be $4,376,673 using a two-trader model, excluding prejudgment interest. *See* Declaration of Lawrence P. Eagel ("Eagel Decl."), Exhibit ("Ex.") 1 (Declaration of Dr. Adam Werner of SEDA Experts, LLC, the "Werner Decl." or "Werner Declaration") *See also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235,

---

[9]  *See also*, *Aero Norfolk, LLC v. Phila. Truck Lines, Inc.*, C.A. No. 2:21cv101 (RCY), 2022 U.S. Dist. LEXIS 50504, at *4 (E.D. Va. Mar. 21, 2022) (defendant's failure "to proffer any evidence of its 'meritorious defense'" "failed to meet the extraordinarily low bar set by this factor").

[10]  Upon collection of any default judgment, counsel will apply to the Court for an award of attorneys' fees and reimbursement of other litigation expenses. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836-RBS-DEM, 2023 U.S. Dist. LEXIS 187657 (E.D. Va. Oct. 18, 2023) (analyzing and awarding attorneys' fees and expenses from common fund recovery in class action).

171 (D.N.J. 2000) ("The use of trading models is accepted to create an estimate of aggregate damages."). Fundamentally, aggregate damages estimates are the product of two calculations: a) the number of shares damaged; and b) the amount that those shares are damaged by, or damages per share. Werner Decl., ¶ 7. Thus, to estimate aggregate damages, one must initially estimate how many shares were purchased during the Class Period and later sold (if sold) and the amount of per share damages associated with these paired purchases and sales. *Id.* To estimate how many shares were bought on each day of the Class Period and to ascertain if and when those same shares were subsequently sold, the two-trader proportional trading model (or "two-trader model"), is a commonly used tool for providing estimates of aggregate damages in securities cases. *Id.* at ¶ 8.

The two-trader proportional trading model recognizes that most stock trading volume is attributable to a relatively small subset of traders, while the remaining investors tend to have longer holding periods. *Id.* at ¶ 16. Accordingly, market participants are divided into two groups: "traders," who trade frequently, and "holders," who trade less frequently. *Id.* The model employs parameter estimates for the percentages of outstanding shares held by each of the two groups, and the greater frequency of "trader" trades relative to "holder" trades. *Id.* The model then uses reported trading volume and tradeable float to estimate when share purchases were subsequently sold. *Id.* at ¶ 17. Essentially, the model estimates the probability of any particular share being traded on a particular day, depending on whether the owner of the share is a "trader" or a "holder." *Id.* Next, it applies this probability to estimate the number of shares that had been purchased on each prior day which are then re-traded on each respective subsequent day. *Id.* The model's construction and operation are further detailed in the Werner Declaration and results in Class-wide damages of $4,376,673. *Id.* at ¶¶ 18-28.

**B.    Defendants Should Pay All Notice Costs**

Plaintiffs argued in their motion for approval of class notice that Defendants should bear the burden of the notice costs.  ECF No. 46 at pp. 6-7.  That argument continues to be applicable, and the Court should include the costs of notice in the default judgment amount.  In summary, it has been recognized by the United States Supreme Court that there is no mandate requiring plaintiffs always pay notice costs.  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 349-50, 356 (1978); *see also* 3 Newberg on Class Actions § 8:6 (4th ed.) ("The holding in *Eisen* does not preclude allocation of Rule 23(c)(2) notice costs to the defendant in all circumstances. . . .  Diverse ways exist through which a plaintiff may be able to present enough evidence . . . to place the onus of going forward with notice to the class on the defense.").  Several exceptions exist to the general rule which shift the costs to defendants, including:  (1) where there are "insubstantial costs associated with notice-related tasks"; (2) where the costs are "ordinary costs of business"; (3) where notice costs should be charged "as sanction for improper conduct"; and (4) where a determination on the merits has been found.  *Bruno v. Eckehart Corp.*, No. SACV 11-0173-DOC(Ex), 2012 U.S. Dist. LEXIS 196469, at *7-8 (C.D. Cal., Jul. 16, 2012) (quoting 5-23 Class Actions in Federal Courts § 23.106).  Here, the Court's Order shows some success on liability and therefore a shifting of notice costs to Defendants is appropriate.  *See Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1143-44 (9th Cir. 2009) (collecting cases).  Additionally, Defendants have willfully defaulted here.  As explained above, Defendants clearly know about the Action and have refused to respond or appear.  This "improper conduct" supports a shifting of the notice costs to Defendants.  The notice costs here amount to $7,000.  *See* Eagel Decl. Ex. 2 (RG/2 Claims Administration LLC invoice).

16

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a default judgment as to Defendants in the amount of $4,383,673 and grant such further relief as the Court deems necessary.

DATED: April 4, 2024                    Respectfully submitted,

By: /s/ *Elizabeth K. Tripodi*
Elizabeth K. Tripodi (VA Bar #73483)
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, D.C., 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
etripodi@zlk.com

*Local Counsel for Lead Plaintiffs and the Class*

Lawrence P. Eagel (admitted *pro hac vice*)
Marion C. Passmore
**BRAGAR EAGEL & SQUIRE, P.C.**
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email: eagel@bespc.com
        passmore@bespc.com

*Counsel for Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Elizabeth K. Tripodi, hereby certify that the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 4th day of April, 2024.

*/s/ Elizabeth K. Tripodi*
Elizabeth K. Tripodi

## <u>CERTIFICATE OF SERVICE</u>

I, Marion C. Passmore, hereby certify that on the 4th day of April, 2024, I caused to be mailed full and complete copies of the foregoing via U.S. Mail, first-class postage paid, to the following:

> IDP Holdings (USA) Corp.
> c/o VCorp Services, LLC
> 701 S. Carson Street, Suite 200
> Carson City, Nevada 89701
>
> IDP Holdings (USA) Corp.
> 18 King Street East, Suite 1400
> Toronto, Ontario
> Canada, M5C 1C4
>
> IDP Holdings (USA) Corp.
> Attn: Terry Wilshire
> 18 King Street East, Suite 1400
> Toronto, Ontario
> Canada, M5C 1C4

*/s/ Marion C. Passmore*
Marion C. Passmore

19