## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

MICHELE DELUCA, *et al.*,

     Plaintiffs,

     v.

INSTADOSE PHARMA CORP., *et al.*,

     Defendants.

Case No. 2:21-cv-675

## OPINION & ORDER

In this securities fraud class action, Plaintiff Michele Deluca and the other members of the class (collectively, "the plaintiffs"), who invested in Instadose Pharma Corp., request default judgment on two claims against Defendants Instadose Pharma Corp. ("Instadose") and Terry Wilshire ("Wilshire"). The plaintiffs allege that the defendants made false or misleading statements or omissions of fact in connection with the sale of Instadose securities in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5. ECF No. 2 at ¶ 4. The plaintiffs further allege that Defendant Wilshire is liable as a control person of Instadose under Section 20(a) of the Exchange Act. ECF No. 1 ¶ 74.

For the reasons explained herein, the motion will be **GRANTED**.

## I.    BACKGROUND

The original plaintiff in this securities class action and the other members of the Class filed suit against Defendants Instadose and Wilshire on December 30, 2021. ECF No. 1. The original plaintiff timely served the defendants on January 19, 2022.

ECF No. 6 at 3. The defendants failed to submit an answer or other responsive pleading. The Clerk entered default on August 25, 2022, ECF No. 28, and the plaintiffs filed a Motion for Class Certification and Default Judgment, ECF Nos. 32 (motion), 33 (memorandum).[1] The Court denied the first motion for default judgment without prejudice and instructed the plaintiffs to submit a proposed notice plan for the Court's approval before filing a renewed motion for default judgment. ECF No. 43 at 21. The plaintiffs complied with the Court's directive and filed the instant motion on April 4, 2024. ECF No. 49.

In their second motion, the plaintiffs seek default judgment on their claimed violations of the Exchange Act, and they also seek to recover class notice costs. *See generally* ECF No. 50. The Court held a hearing on the motion on November 19, 2024. ECF No. 54.

## II.    LEGAL STANDARDS

### A.    Motion for Default Judgment

Once a defendant is served process, they have 21 days to respond. Fed. R. Civ. P. 12(a)(1)(A)(i). When a plaintiff shows that a defendant has failed to file responsive pleadings, the Clerk "must enter" a default, which amounts to an automatic admission of all allegations in the complaint that do not deal with the amount of damages. Fed. R. Civ. P. 55(a); Fed. R. Civ. P. 8(b)(6). After the Clerk enters a default, a plaintiff who seeks a default judgment on a claim that is not for a sum certain must "apply to the court for a default judgment." Fed R. Civ. P. 55(b)(2).

---

[1] This matter was reassigned to this Court on April 13, 2023.

Whether to grant a motion for default judgment is a matter for the Court's discretion. *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Co.*, 383 F.2d 249, 251 (4th Cir. 1967). The Fourth Circuit strongly prefers that courts adjudicate cases on the merits and has encouraged district courts to construe Rule 55(c) liberally in order to deny motions for default judgment. *See, e.g.*, *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010); *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). However, default judgment is warranted when a defendant fails to appear or participate. *Chafin v. Chafin*, 568 U.S. 165, 175 (2013); *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022). Courts in this district have found that default judgment should be granted when the defaulting party's unresponsiveness has halted the adversary process. *See, e.g.*, *Walsh v. Heavenly Hands Home Healthcare LLC*, No. 2:22-cv-237, 2022 WL 18777533, at *5 (E.D. Va. Sept. 1, 2022); *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016).

Because the defendant, by defaulting, has admitted the facts alleged in the Complaint, the Court must determine whether the plaintiff's allegations are sufficient for judgment to be entered. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In other words, the Court must decide whether the Complaint contains adequate factual materials to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, if the moving party seeks a judgment on damages, the Court has discretion over how damages may be shown. *Transp. Dist. Comm'n of Hampton Roads v. U.S. Workboats, Inc.*, No. 2:21-cv-181, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021) (citing *JTH Tax, Inc. v. Geraci*, No. 2:14-cv-236, 2014 WL 4955373, at *7 (E.D. Va. Oct. 2, 2014)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—*other than one relating to the amount of damages*—is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added).

### B.    Violations of Section 10(b) and Rule 10b–5

The purpose of the Exchange Act is to "protect investors against manipulation of stock prices through a philosophy of public disclosure." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir. 1999) (quotation marks omitted). Section 10(b) of the Exchange Act provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of [the rules propounded by the SEC]." 15 U.S.C. § 78j(b). Accordingly, the SEC enacted Rule 10b–5, which similarly makes it unlawful:

> To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5(b).

"To establish liability under § 10(b) of the Securities Exchange Act and under Rule 10b–5, a plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2)

with scienter (3) upon which the plaintiff justifiably relied (4) that proximately cause the plaintiff's damages." *Longman*, 197 F.3d at 682 (quotation marks omitted).

### i.    *Materiality of Fact*

"[A] fact stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Longman*, 197 F.3d at 683.

### ii.    *Scienter*

"Scienter refers to a mental state embracing intent to deceive, manipulate, or defraud." *Sec. & Exch. Comm'n v. KRM Services, LLC*, No. 1:19-cv-01424, 2021 WL 4498646, at *3 (E.D. Va. Aug. 26, 2021) (quotation marks omitted). To plead scienter, a plaintiff must sufficiently allege that the defendant knew that failing to disclose a fact was wrongful—or that they acted with reckless disregard for the truth. *See Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 172 n.9 (4th Cir. 2007); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "[I]f the defendant is a corporation, the plaintiff must allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation, since corporate liability derives from the actions of its agents." *Teachers' Ret. Sys. of LA*, 477 F.3d at 184.

A plaintiff must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

Facts that plead a defendant's recklessness are sufficient to satisfy the scienter requirement. *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009). "Reckless conduct sufficient to establish a strong inference of scienter is described as severe, or conduct that is so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Zak*, 780 F.3d at 606 (citations and quotation marks omitted).

Complaints alleging securities fraud must meet a heightened pleading standard imposed by the Private Securities Litigation Reform Act ("PSLRA"). *Zak*, 780 F.3d at 606 (citation omitted). To meet this standard, an inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323–24. Therefore, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

### C.    Violations of Section 20(a) of the Exchange Act

Section 20(a) provides for joint and several liability against individuals who "control" others who are liable under the Exchange Act. Individuals in positions of control are liable to the same extent as those that they control. 15 U.S.C. § 78t. Pursuant to § 20(a):

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation of the cause of action.

15 U.S.C. § 78t(a).

To successfully plead a *prima facie* case of "control person liability" under § 20(a), a claim "must allege: (1) a predicate violation of § 10(b) and (2) control by the defendant over the primary violator." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129–30 (4th Cir. 2009), *rev'd on other grounds*, *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

However, a *prima facie* case for control person liability does not require the plaintiff to allege culpable participation on the defendant's part. *In re Mut. Funds Inv. Litig.*, 566 F.3d at 130 (citation omitted) ("[O]nce the plaintiff establishes the prima facie case [of control], the burden shifts to the defendant to show lack of culpable participation or knowledge.") (alteration in original) (citation omitted); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000). Thus, for the purposes of § 20(a), there are no heightened pleading requirements,

particularly as to scienter or culpability; and a plaintiff need only satisfy Rule 8's short and plain statement requirement. *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 831 n.4 (E.D. Va. 2014).

"The SEC defines 'control' as the 'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership [o]f voting securities, by contract, or otherwise." *In re MicroStrategy*, 115 F. Supp. 2d at 661 (quoting 17 C.F.R. § 240.12b–2). To plead the control requirement, a plaintiff must:

> Plead[] facts showing that the controlling defendant had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.

*Id.* (second alteration in original) (quotation marks omitted). When determining "whether a defendant possessed the requisite control, []courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 602–03 (E.D. Va. 2015) (cleaned up).

"The question of whether someone qualifies as a controlling person under [§] 20(a) . . . is a complex factual question," so "facts from which it can reasonably be inferred the defendant was a control person" are sufficient to allege the second element of the claim. *In re MicroStrategy*, 115 F. Supp. 2d at 661 ("dismissal is appropriate only when a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person.").

### III.    ANALYSIS

#### A.    Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises questions of federal law by asserting claims under the Securities Act and the Exchange Act, 15 U.S.C. §§ 77e(a) and (c), 77q(a), and 78j(b). The Acts establish that district courts retain subject matter jurisdiction over related offenses. *KRM Services, LLC*, 2021 WL 4498646, at *2 (citing 15 U.S.C. §§ 77a, 77v(a), 78a, and 78aa).

#### B.    Default Judgment is Appropriate and Reasonable

The Court would prefer to decide this case on the merits, but the defendant's nonresponse makes that impossible. *See Colleton Preparatory Acad.*, 616 F.3d at 417. By failing to file responsive pleadings for nearly three years, the defendant has brought the adversary process to a standstill. *See Walsh v. Heavenly Hands Healthcare LLC*, No. 2:22-cv-237, 2022 WL 18777533, at *5 (E.D. Va. Sept. 1, 2022). Therefore, the Court finds default judgment appropriate.

#### C.    The Complaint Plausibly Alleges Claims for Violations of Section 10(b) and Rule 10b-5 Against All Defendants.

As an initial matter, despite the Complaint's many boilerplate allegations that the defendants made "materially false" statements, *see, e.g.*, ECF No. 1 ¶¶ 4, 17, 47, 64, the Court can find no allegation in the Complaint or in the briefing that any specific statement Instadose made was actually false. The plaintiffs fail to explain whether a given alleged misrepresentation is an omission or a false statement:

> Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. *Specifically, Defendants made false and/or misleading statements and/or failed to disclose that*: (i) Instadose had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) Instadose's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; (iii) the foregoing subjected Instadose to a heightened risk of regulatory scrutiny and enforcement action; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

ECF No. 33 at 9–10 (emphasis added); *see also* ECF No. 1 ¶ 47. The plaintiffs never identify which of Instadose's statements constitute the alleged misrepresentations. Moreover, the plaintiffs admit in their initial brief that "the Complaint *primarily* alleges omissions," but then proceed to list precisely the misrepresentations alleged in the paragraph quoted above: inadequate due diligence, inadequate internal control and policies, and a heightened risk of regulatory scrutiny. *See* ECF No. 33 at 31 (emphasis added). Given these facts, the Court is forced to conclude that the plaintiffs have not pleaded any claims relating to false statements. As a result, the Court will analyze the defendants' alleged statements as omissions only.

The Complaint and the plaintiffs' initial brief focus primarily on one omission: Instadose's failure to disclose the charges by the Ontario Securities Commission (OSC) against Instadose Canada's CEO in July 2021. *See, e.g.*, ECF No. 33 at 20–21 (discussing only the OSC charges). When the Court issued an order that challenged the justifiable reliance and causation prongs related to that allegation and requested

supplemental briefing, the plaintiffs changed tactics. Their supplemental brief shifted focus to allegations that the plaintiffs argue are "separate and apart from the OSC and Instadose Canada's CEO's activities." ECF No. 36 at 4 (supplemental brief); *see also* ECF No. 35 (ordering supplemental briefing). Those allegations are: (1) that Instadose failed to disclose its "inadequate due diligence" related to the deal with Instadose Canada; (2) that Instadose failed to disclose that its "internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons"; and (3) that "the foregoing" subjected Instadose to "a heightened risk of regulatory scrutiny and enforcement action." ECF No. 36 at 4 (citing ECF No. 1 ¶¶ 4, 47).

All of the omissions alleged in the Complaint appear to the Court to state, in slightly different ways, the same general alleged omission: that the defendants failed in their obligation to tell the whole story regarding Instadose's financial and operational state. The Complaint alleges that the defendants withheld, either intentionally or recklessly, material information from investors while reporting only positive information in the Sarbanes-Oxley Act disclosures published during the Class Period. Therefore, the Court will analyze this consolidated actionable omission.[2]

---

[2] For the reasons outlined in the Court's previous Order, the Court finds that the Complaint does not plead sufficient facts to state a claim regarding the alleged inadequate internal controls omission. ECF No. 43 at 13.

### i. *False Statement or Omission of Material Fact*

The Complaint alleges that on July 9, 2021, the Ontario Securities Commission announced that the CEO of Instadose Canada had been "charged quasi-criminally with one count of fraud" based on allegations "that investor funds were diverted to the benefit of" the CEO, his family, and his associates. ECF No. 1 ¶ 5. The OSC also alleged "that Instadose Canada materially misrepresented the nature of its business." *Id.* Months before the announcement of the OSC charges, Instadose had told investors that it intended to "acquire 100% of the outstanding common shares of Instadose Canada." ECF No. 1 ¶ 22. On November 23, 2021, the SEC "ordered the suspension of trading of [Instadose] securities . . . 'because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate.'" ECF No. 1 ¶ 48. Given the steep drop in stock price that occurred once the SEC announced its concerns in its Order of Suspension of Trading and the positive representations that Instadose had made regarding the impending benefits of the transaction with Instadose Canada and the operations of Instadose Canada beforehand, *id.* ¶ 39, it is clear that investors would have considered negative information—such as information regarding the OSC charges—significant "in deciding whether to buy or sell the security." *See Longman*, 197 F.3d at 683. Or, alternatively, investors "would have viewed the total mix of information

12

made available to be significantly altered by disclosure" of these omitted facts. *Id.* As a result, the Court finds that this was a material omission.

### ii.    Scienter

The Complaint plausibly alleges facts that support a strong inference of scienter that is both cogent and compelling.

Taking the facts alleged in the Complaint as true, the defendants knew about the OSC charges against Instadose Canada's former CEO but did not disclose them to actual and potential investors. The Complaint alleges that Wilshire had "knowledge of Instadose's internal affairs" because of his position "as the senior manager and/or director of Instadose." ECF No. 1 ¶ 65. The Court agrees.

Instadose was "classified as a shell company." ECF No. 1 ¶ 2 (internal quotations omitted). Therefore, the Court can reasonably infer that Wilshire was one of a small number of employees at Instadose. ECF No. 55 at 7. Based on the facts pleaded in the Complaint, the earliest point at which the defendants had the requisite scienter was after the OSC announced fraud charges against Instadose Canada's former CEO on July 9, 2021. ECF No. 43 at 11. The Court can also reasonably infer that the defendants knew about the OSC charges considering that Instadose had publicly announced its intent to acquire Instadose Canada a few months before the charges were announced. ECF No. 1 ¶ 22. Given Instadose's proclaimed interest in acquiring Instadose Canada, it can be reasonably inferred that the defendants were aware of the charges. Because Wilshire was one of very few employees at Instadose, the Court finds it reasonable to impute knowledge of the charges to him. The Court

further finds it reasonable to impute Wilshire's knowledge to Instadose and vice versa, given Wilshire's roles "as Instadose's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of the Company at all relevant times." ECF No. 1 ¶ 16.

To determine whether an inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent," the Court compares the negative inferences against other "plausible, nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 314, 323–24. The most plausible inference of nonfraudulent intent is that the defendants believed they had sufficiently disclosed relevant adverse information. Instadose did, in fact, disclose *some* adverse information. For example, Instadose repeatedly disclosed that it was in debt to its former CEO. ECF No. 1 ¶¶ 26 (2020 Form 10-K), 30 (1Q21 Form 10-Q), 35 (2Q21 Form 10-Q), 42 (3Q21 10-Q). Specifically, in its 2Q21 Form 10-Q, Instadose disclosed that "[t]he funds available to the Company will not be sufficient to fund the planned operations of the Company and maintain a reporting status." ECF No. 1 ¶ 35. Instadose's disclosure of this adverse information supports the nonculpable inference that the defendants believed they had sufficiently disclosed all material information.

However, the facts alleged in the Complaint support an alternative inference of scienter that is *as* compelling, if not more compelling, as any nonculpable inference. At minimum the Complaint plausibly alleges that the defendants were reckless in omitting adverse material facts from their required SEC disclosures. *See Tellabs*, 551 U.S. at 314. The Court looks at the context of the statements the defendants

affirmatively made to determine whether to infer scienter. *Zak*, 780 F.3d at 609. The defendants—who had knowledge of the OSC charges—"tout[ed]" in their disclosures the "purported benefits" of the transaction with Instadose Canada but neglected to disclose the problems with the transaction. ECF No. 55 at 5; ECF No. 1 ¶ 39.

The defendants' touting of the positives of the transaction with Instadose Canada and the contemporaneous omission of negative information—namely, the OSC charges in the same disclosures—supports the inference that the defendants either intentionally or recklessly misled investors. ECF No. 55 at 7, 12; *see Zak*, 780 F.3d at 610. Further, Wilshire signed all relevant disclosure forms that were accessible to investors. ECF No. 55 at 16; ECF No. 1 ¶¶ 24, 28, 32, 37, 38, 44, 46. The fact that Wilshire signed the disclosure forms—stating that all material information had been provided in the form disclosure—while he, in fact, had knowledge of the OSC charges supports an inference of scienter. *See* ECF No. 1 ¶ 28 ("Defendant Wilshire certified that . . . 'the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of [Instadose.]'").

And intentionally or recklessly misleading investors in this way makes some sense if the goal is to minimally comply with disclosure requirements but obscure the reality of the situation from the people whose financial commitments you depend upon. The allegations in the Complaint support the inference that the defendants did precisely that.

In sum, these actions (or inactions), taken collectively, lead to a cogent inference of scienter—of intent to deceive that is equally, if not more, compelling than the most plausible nonculpable inference that can be drawn from the facts alleged in the Complaint. *See id*. Therefore, the scienter requirement is satisfied.[3]

### iii.    Justifiable Reliance

The Complaint adequately alleges facts to demonstrate that the plaintiffs justifiably relied upon the defendants' material omissions. The plaintiffs argue that they have established justifiable reliance in two ways. First, the plaintiffs rely on a "fraud-on-the-market" theory. Under this theory, a court presumes that "in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988) (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160 (3d Cir. 1986)). Thus, a fraud-on-the-market theory creates a rebuttable presumption of reliance based on the idea that "the market price of shares traded on well-developed markets

---

[3] It is peculiar for the Court to assess the adequacy of a complaint under a heightened pleading standard in the posture of a motion for default judgment. Normally there would be an opposing party to advance a specific innocent inference against which the Court would test the sufficiency of the plaintiffs' allegations. But because the defendants have failed to participate in this litigation, the Court must conceive of that inference on its own. After a hearing that addressed this issue, the Court is satisfied that the Complaint meets the heightened pleading standard.

reflects all publicly available information, and, hence, any material misrepresentations." *Id.* at 245–46.

To establish that the presumption of reliance applies, a plaintiff must show "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). The alleged misrepresentations—here, omissions—were publicly known because the material information was omitted from Instadose's public disclosures. ECF No. 1 ¶ 24–47; *see supra* Part III.C.i (explaining materiality). Thus, prongs 1 and 2 are satisfied.

There are several facts pleaded in the Complaint that, taken as true, support the proposition that the securities were traded in an efficient market. The Complaint states that "the Company's shares were liquid and traded with moderate to heavy volume during the Class Period" and "the Company traded on the OTC and was covered by multiple analysts." ECF No. 1 ¶ 57. Elsewhere, the Complaint states that "Instadose securities were actively traded on the OTC" and "Plaintiff believes that there are hundreds or thousands" of individuals who traded the securities during the relevant timeframe. *Id.* ¶ 52. While these facts lack specificity, the Court must take them as true in this posture and make all reasonable inference in the plaintiffs' favor. As a result, the Court finds that the securities were traded on an efficient market.

17

The fourth factor is whether the plaintiffs traded the security between the time the misrepresentations were made and when the truth was revealed. Here, the alleged misrepresentation is that the defendants failed to disclose the OSC charges against Instadose Canada's former CEO. *See supra* Part III.C at 11. As the Court described above, the scienter requirement is only met as of July 2021 when the OSC charges were publicly announced. There cannot have been an actionable omission until after the charges were announced. Therefore, the relevant question is whether the plaintiffs traded the security between the time the September 2021 Form 8-K was issued and the November 2021 SEC announcement.[4]

The Complaint states that "[t]hroughout the Class Period, Instadose securities were actively traded on the OTC" and "Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made . . . purchased or otherwise acquired shares of Instadose securities at prices artificially inflated by Defendants' wrongful conduct." ECF No. 1 ¶¶ 52, 67. It also asserts that the class period is "between December 8, 2020 and November 24, 2021," *id.* ¶ 1, which includes the period between September 2021 and November 2021. Therefore, the Court can reasonably infer that one or more class

---

[4] The Complaint also identifies an intervening disclosure between the July 8, 2021 announcement of charges and the September 22, 2021 Form 8-K: a July 14, 2021 Form 10-Q filing. ECF No. 1 ¶ 34. The plaintiffs do not argue that the OSC charges were wrongfully omitted from this disclosure. The Court presumes that this is because the July 14, 2021 10-Q filing did not discuss the contemplated transaction with Instadose Canada, while the September 22, 2021 Form 8-K did. Therefore, the July 14, 2021 10-Q filing does not constitute an omission.

members purchased Instadose securities between the September 22, 2021 Form 8-K and the November 24, 2021 SEC announcement.

For the foregoing reasons, the plaintiffs have established that a presumption of reliance attaches to purchases made between the September 22, 2021 Form 8-K and the November 24, 2021 SEC announcement.

Alternatively, the plaintiffs assert that a presumption of reliance, as described in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 132 (1972), applies. Such a presumption applies in cases "where plaintiffs plead 'an omission of a material fact by one with a duty to disclose.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008)). The Court has already determined that the omission of the OSC charges against Instadose Canada's former CEO was material; therefore, the only remaining question is whether the defendants had a duty to disclose the charges. *See supra* Part III.C.i. The plaintiffs point to no facts establishing that the defendants were obligated to disclose the OSC charges in the September 2021 8-K filing. However, a duty to disclose may arise "when there is . . . a corporate statement that would otherwise be inaccurate, incomplete, or misleading." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (internal quotations omitted). Here, the Complaint asserts that the September 2021 8-K provided information regarding the contemplated transaction with Instadose Canada, "indicating to investors the purported benefits that would flow to Instadose following consummation" of the deal. ECF No. 1 ¶¶38–39. These statements were

19

misleading in light of the OSC charges against Instadose Canada's former CEO. As a result, the plaintiffs have established that a presumption of reliance pursuant to *Affiliated Ute* applies as of the September 2021 8-K filing.

A presumption of reliance based either on a fraud-on-the-market theory or an *Affiliated Ute* theory may be rebutted if the information that was allegedly omitted was already known to the market. *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010). Such information "must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations." *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989). "Because the truth on the market defense is intensely fact-specific, it is rarely an appropriate basis for dismissing a § 10(b) complaint." *In re Merrill Lynch*, 704 F. Supp. 2d at 394 (quotation marks and citation omitted).

In this case, the Complaint states that the OSC announced on July 9, 2021, that the CEO of Instadose Canada "was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose." ECF No. 1 ¶ 5. The Complaint also explains that "[t]he OSC alleged that investor funds were diverted to the benefit of [the CEO], his family, and associates, and that Instadose Canada materially misrepresented the nature of its business." *Id.*

The Court previously expressed concern that the OSC's July 9, 2021 announcement sufficiently placed in the market knowledge of the OSC charges. ECF No. 35. However, given that the truth-on-the-market-defense is an "intensely fact-

specific inquiry," the Court finds that the defense is not an appropriate basis for dismissing the plaintiffs' claim as to this omission. *In re Merrill Lynch*, 704 F. Supp. 2d at 394. This is especially true given that the defendants failed to appear in this case to rebut the plaintiffs' successfully pleaded presumption of justifiable reliance. Therefore, the plaintiffs have adequately pleaded the justifiable reliance element.

### iv.    *Proximate Cause*

Finally, the Complaint adequately alleges facts to establish that the defendants' omissions were a proximate cause of the plaintiffs' losses. The plaintiffs must demonstrate "that [the] defendant's misrepresentation was a *substantial cause* of the loss by showing '[a] direct or proximate relationship between the loss and the misrepresentation.'" *Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir. 2004) (alteration and emphasis in original). In general, "to properly plead loss causation in a fraud claim, a plaintiff must allege that the price fell after the truth came to light about a misrepresentation, and that the plaintiff suffered damages as a result." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 478 (4th Cir. 2006).

Here, the plaintiffs plead that, after the November 24, 2021 announcement of the SEC stopping the trading of securities in Instadose, "the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share." ECF No. 1 ¶ 8. Further, the plaintiffs aver that they and other Class members "suffered significant losses and damages." ECF No. 1 ¶ 9. Therefore, the plaintiffs have satisfied the proximate cause factor.

For the foregoing reasons, the Court finds that the defendants' failure to disclose the whole story regarding Instadose's financial and operational state is an actionable omission, and the plaintiffs adequately plead a claim against Defendants Instadose and Wilshire under § 10(b)(5) of the Exchange Act and Rule 10b–5. Accordingly, the Motion for Default Judgment will be **GRANTED** as to Count One.

### D.    The Complaint Plausibly Alleges a Claim for Violation of Section 20(a) of the Exchange Act Against Wilshire.

The plaintiffs also successfully plead a claim against Wilshire under § 20(a). The plaintiffs provide sufficient facts to reasonably infer that Wilshire had "control" over Instadose, the primary violator within the meaning of § 20(a). *In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 717 (E.D. Va. 2020).

#### i.    *Primary Securities Violation*

As explained in Part III.C., *supra*, the plaintiffs plausibly allege that Instadose—the "controlled" actor—violated § 10(b) and Rule 10(b)(5). Therefore, there exists a primary violation under the Exchange Act to serve as a basis for the plaintiffs' § 20(a) claim.

#### ii.    *Control Person*

The plaintiffs also plausibly allege that Wilshire had responsibility over an area of the company where the underlying violation occurred. *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012). The plaintiffs claim that Wilshire "served as Instadose's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of the Company at all relevant times." ECF No.1 at 5. The plaintiffs further maintain that,

because of his role at Instadose, Wilshire "possessed the power and authority to control the contents of Instadose's SEC filings, press releases, and other market communications." ECF No. 1 at 5. Accepting these facts as true, the Court finds it reasonable to infer that Wilshire's role at Instadose granted him sufficient "control" over the public information dispensed by Instadose. *See supra* Part III.C.ii.

The plaintiffs further allege that the power inherent in Wilshire's role at Instadose manifested in Wilshire's signing of public statements and SEC filings that allegedly contained omissions of material fact—the subject of the underlying Section 10(b) violations in this case. *See* ECF No. 1 at ¶ 24 (alleging Wilshire signed the December 8, 2020 Form 8-K filed with the SEC), ¶¶ 28, 37, 44 (alleging Wilshire signed certifications pursuant to the Sarbanes-Oxley Act of 2002 accompanying submitted Form 10-Ks filed with the SEC), ¶ 39 (alleging that Wilshire signed the September 22, 2021 Form 8-K that "highlighted the business operations of Instadose Canada, indicating to investors the purported benefits that would flow to Instadose following consummation of the Business Combination."), ¶¶ 46, 47 (alleging that Wilshire signed a Form 8-K that provided "an update on the contemplated transaction with Instadose Canada," which is another statement that plaintiffs allege were materially "false and/or misleading."). These facts, taken as true, make it plausible that Wilshire "had the ability and opportunity to prevent their issuance or to cause them to be corrected." ECF No. 1 at 5. Thus, the plaintiffs sufficiently plead facts to show that Wilshire not only exercised control over the drafters of these public filings and statements but also that he approved the creation of the filings. Therefore,

it is plausible that Wilshire possessed the power to "cause the direction of the management and policies" of Instadose. 17 C.F.R. § 240.12b-2.

Because the plaintiffs sufficiently allege a § 10(b) predicate violation and it is plausible that Wilshire, through his role at Instadose, had "the power or potential power to influence and control the activities" of Instadose, the plaintiffs plausibly allege a § 20(a) claim against Wilshire. *Kiken*, 155 F. Supp. at 603 (cleaned up). Accordingly, the Motion for Default Judgment will be **GRANTED** as to Count Two.

## IV.  RELIEF

In their motion for default judgment, the plaintiffs request that they be awarded (1) actual damages and (2) class notice costs. ECF No. 50 at 19. The Court will address each request in turn.

### A.  Damages

The Court has discretion over how damages may be shown. *Transp. Dist. Comm'n of Hampton Roads*, 2021 WL 8445262, at *4. The Court finds that a hearing on the issue of damages is unnecessary because the plaintiff's evidence provides a sufficient basis to award damages. *See* Fed. R. Civ. P. 55(b)(2)(B).

A detailed expert report supports the conclusion that the defendants are responsible for the damages the plaintiffs claim.[5] *See* ECF No. 49-3. As is common in securities fraud cases, the plaintiffs' expert witness employs a two-trader model to estimate the "damages suffered by investors in Instadose common stock during the

---

[5] The Court finds that the expert witness satisfactorily meets the criteria set out in Federal Rule of Evidence 702.

Class Period." *Id.* at 13. Controlling for differences in trading practices, the plaintiffs' expert estimates that investors in Instadose common stock suffered $4,376,673 in damages. *Id.* at 5, 10. This calculation properly accounts for the damages cap prescribed by the PSLRA. 15 U.S.C. § 78u-4(e)(1).

The defendants have defaulted and therefore offer no evidence to suggest that there is an error in the calculations or methodology provided by the plaintiffs. After careful review of the expert report, the Court finds that the plaintiffs suffered $4,376,673 in damages as a result of the defendants' misconduct.

### B. Notice Costs

"The usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). However, there are some instances where courts may shift the cost of notice from the plaintiff to the defendant. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978). Where a court decides in favor of the plaintiffs on the merits, it may, in its discretion, decide to shift the burden of notice costs to a defendant, and the court may consider the totality of the circumstances when reaching its decision. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009). However, in determining whether to shift the costs of class action litigation to the defendant, "courts must not stray too far from the principle . . . that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund, Inc.*, 437 U.S. at 359.

Here, the Court finds that there is an insufficient basis for shifting the costs of class notice to the defendants. The plaintiffs argue that shifting notice costs is warranted because the defendants' failure to appear constitutes "improper conduct." ECF No. 50 at 21. But the plaintiffs fail to offer a good cause to shift the notice costs. Nor do the plaintiffs demonstrate an inability to pay the notice costs or demonstrate that the payment of notice costs would be particularly burdensome. *See Hunt*, 560 F.3d at 1144. Instead, it appears to the Court that the plaintiffs seek to shift the burden of notice costs to the defendants solely because of the defendants' default. ECF No. 50 at 21. The Court declines to do so. To shift the burden of notice costs to the defendants, absent good cause or a demonstrated inability to pay the costs, would merely serve to penalize the defendants for their default. But the entry of default judgment is a sufficient penalty for the defendants' failure to participate in this litigation. Therefore, the Court finds no sufficient reason to deviate from the usual rule and shift the responsibility of notice costs to the defendant. *See Eisen*, 417 U.S. at 177.

## V.    CONCLUSION

The plaintiffs' Second Motion for Default Judgment (ECF No. 49) is

**GRANTED**.

It is **ORDERED** that judgment be entered against Defendants Instadose

Pharma Corp. and Terry Wilshire for damages in the amount of $4,376,673.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the

defendants and to all counsel of record.

**IT IS SO ORDERED.**

_____ /s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
December 23, 2024